THE CHICAGO, SAINT PAUL, MINNEAPOLIS AND OMAHA RAILWAY COMPANY, PLAINTIFF IN ERROR, V. SWAN M. LUNDSTROM, ADMINISTRATOR OF THE ESTATE OF ANDREW P. SWANSON, DECEASED, DEFENDANT IN ERROR.

1. Railroads: CONSTRUCTION OF STATUTE. The power and franchise of the plaintiff in error to take by purchase, own, and operate the railroad in question is derived from the provisions of the act of March 1, 1881, entitled "An act authorizing the sale and purchase of railroads in certain cases," [Comp. Stat., ch. 72, art. IV.] and the plaintiff in error is bound by the provisions of said act.

2. ———: ———: LIABILITY OF RAILROAD COMPANY. The word indebtedness, as used in the first section of the act above referred to, was intended to and does mean and embrace all debts and demands against the selling company or railroad upon which a suit could be maintained either at law or in equity.

3. ———: NEGLIGENCE OF CONDUCTOR: MASTER AND SERVANT. A conductor of a construction train on a railroad, with a gang of men engaged to work as day laborers for the railroad company but under the immediate orders of such conductor, is, as to such men, the vice-principal of the railroad company and not a fellow servant of such men. And an act of gross negligence on the part of such conductor, whereby the lives of such men are placed in jeopardy while working under his immediate orders and direction, and one of them is killed, is the negligence of the company, for which it is liable.

4. Practice in Supreme Court. In a proceeding on error to a district court this court can only consider such points as have been brought to the attention of the district court and a ruling had or demanded thereon, and it is such ruling or refusal to rule by the district court upon which this court can act.

5. Jurisdiction. The courts of this state have jurisdiction of civil actions co-extensive with the boundaries of the state.

ERROR to the district court for Burt county. The action was brought there by Lundstrom to recover damages on account of the death of his intestate occurring in the manner stated in the opinion. The accident occurred

while the deceased was in the employ of the St. Paul & Sioux City Railroad, who had disposed of its road to the defendant below prior to bringing of this action. Trial below before WAKELEY, J. and a jury, with verdict and judgment for plaintiff of $5,000 and costs. Defendant railroad company brought the cause here on a petition in error.

*John D. Howe* (with whom were *T. M. Marquett* and *John C. Spooner*), for plaintiff in error, on first point cited: *Whipple v. U. P. R. R.*, 28 Kan., 474. *Meyer v. Johnston,* 64 Ala., 603. *M. V. R. R. v. C., St. L. & N.*, 58 Miss., 846. *Racine v. F. L. & T. Co.*, 49 Ill., 331. Green's Brice Ultra Vires, 524, 524-5. *Sappington v. Railroad*, 37 Ark., 23. *T. & B. R. R. v. Circuit Judge*, 44 Mich., 479. Morametz on Corporations, § 558. Field on Corp., §§ 436, 473, and cases cited. On second point, error in giving instructions, cited: Wood Master and Servant, §§ 435, 451. *Lawler v. Railroad*, 62 Me., 466. *Moseley v. Chamberlain,* 18 Wis., *700. *Weger v. Penn. R. R.*, 55 Penn. State, 460. *Zeigler v. Day*, 123 Mass., 152. 2 Thompson Negligence, 979. *Slater v. Jewett*, 85 N. Y., 61. *Sweeney v. C. P. R. R.*, 57 Cal., 15. *Hughes v. Winona Co.*, 27 Minn., 137. *Brickner v. N. Y. Central*, 2 Lans., 506, 49 N. Y., 672. *Davis v. Detroit*, 20 Mich., 105.

*Thurston & Hall* and *Parrish & Lewis*, for defendant in error, cited: Wharton Negligence, 235. 1 Redfield Railways, 552. 2 Thompson Negligence, 1028. *Platt v. Eggleston et al.*, 20 Ohio State, 415. *Railroad Co. v. Keary*, 3 Ohio St., 201. *Berea Stone Co. v. Kraft*, 31 Ohio St., 287–292. *Whaalan v. The Mad River & Lake Erie R. R. Co.*, 8 Ohio St., 249–251. *Louisville & Nashville R. R. Co. v. Collins*, 2 Duvall (Ky.), 114. *Railroad Company v. Fort*, 17 Wallace, 553. *Mann v. Oriental Print Works*, 11 R. I., 152. *Cooper v. Central Railroad of*

*Iowa*, 44 Iowa, 134.    *Cook v. Hann. & St. Jo. R. R. Co.*, 63 Mo., 397.    *Nashville & Decatur R. R. Co. v. Jones, adm'r.*, 9 Heisk (Tenn.), 27–8.    *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich., 205.    *Lalor v. C. B. & Q. R. R. Co.*, 52 Ilis, 401.    *Mullan v. Philadelphia & Southern Mail Steamship Co.*, 78 Pa. St., 25–32.    *Gormly v. Vulcan Iron Works*, 61 Mo., 492.    *K. P. Ry. Co. v. Little*, 19 Kas., 267.    *Malone v. Hathaway*, 64 N. Y., 5.    *Brothers v. Cartter*, 52 Mo., 372.    *Stoddard v. St. Louis, Kansas City & Northern Ry. Co.*, 65 Mo., 514.    *Walker v. Bolling*, 22 Alabama, 294.    *K. P. Ry. Co. v. Salmon* 14 Kan., 512.    *Chapman v. Erie Railway Co.*, 55 New York, 579.    *Railway Co. v. Lavalley*, 36 Ohio State, 221 *Brabbits v. Chicago & Northwestern Ry. Co.*, 38 Wis., 289.

COBB, CH. J.

I heard the argument at the bar and have read the exhaustive briefs of counsel on the part of plaintiff in error with great interest, and particularly upon the first point as to the liability of the plaintiff in error upon a cause of action primarily existing against the Sioux City Railroad Company, and whether the allegations of the petition of plaintiff in the court below are sufficient to charge that liability upon the plaintiff in error, and while I admit the force of the argument and that the logic of the briefs is well nigh irrefragable, yet I do not think it possible that the state of our laws has been such as to permit a foreign corporation to own and operate a railroad in this state, contract debts and incur obligations, and whenever it suited the pleasure of its stockholders or officers, sell out all of its property and franchises, its very existence so far as this state is concerned, and leave its property and franchises within our borders freed from such debts and obligations, and in the possession of another foreign corporation lacking only the motive and the opportunity to do the same

thing. All of the provisions of law previous to the act of 1881 (Comp. Stat., chap. 72, art. IV.) providing for the sale of railroads within this state, provided for their sale to corporations organized under the laws of this state, or to individuals contemplating organizing under the incorporation laws of this state, and provides that the contracts and agreements made by any such railroad company prior to such transfer, should be binding upon the new owners.

I think it clear that under none of these provisions could the plaintiff in error have legally become the purchaser of the railroad in question. As is well said by counsel in the brief, it was the policy of this state to invite foreign corporations to extend the lines of their roads to our borders and build railroads in our state, but they never were invited to buy out railroads already built, nor permitted to do so by law until the act of 1881, and although the deed of sale of the railroad in question bears date twenty-one days earlier than the taking effect of the statute of 1881, yet it was evidently made in view of the provisions of that act, and of its becoming the law of the land at an early day thereafter, and if the plaintiff in error has the right and franchise to own and operate a railroad within the state of Nebraska to-day, it derives that right from the provision of the act of 1881. Holding its very existence within our state under that act it is bound by its provisions. Among those provisions are the following: "The purchase (purchaser) of any such railroad shall be subject to any and all laws, (liens,) incumbrances, or indebtedness existing against the railroad company from which such road may be so purchased." The word indebtedness is here used in its large and general sense, and not in a technical one. Its primary definition as given by Webster to the word indebted: Placed in debt; being under obligation; held to payment, or requital; beholden.

The plaintiff in error then took the railroad in question charged with the payment of any just claims which were

outstanding against the road, or of its former owner as such, including that of defendant in error, or his decedent, if such claim be found just.

The second point made by counsel is upon the instructions given by the court to the jury on the trial. The instruction specially objected to and relied upon as error by plaintiff in error in its brief, was in the following language:

"Ordinarily, an action cannot be maintained by an employee of a person or corporation against the employer for an injury received through the negligence of another employee engaged in the same common service.    *    *    * If you find that Carnes had control and direction of the men who were engaged in cleaning the track, and widening the cut through the snow at the place where the injury was received; that the men were bound by the terms of their service to obey the orders of Carnes, that at the time and under the circumstances it was attended with unusual and peculiar danger and hazard to work in the cut, on account of the approaching train, that Carnes knew this and had the power, authority, and means to cause timely warning to be given to the men of the proximity and approach of the train; that they expected and relied on him to do so; that he failed to do so; and in consequence thereof the deceased was run over and killed, this was negligence for which the railroad company was responsible."

It appears from the bill of exceptions that the decedent of the defendant in error, the deceased, was engaged as a laborer in the employment of the railroad company. He was one of a gang of men attached to a construction train whose business at that season of the year was to clear off the accumulations of snow from the railroad track. One Carnes was the conductor of the train, and boss of the men and of the work in which they were engaged. He had hired most or all of them to work for the company. On the morning of the day of the accident, this gang of men, con-

sisting of fourteen men beside Carnes, the boss and conductor, left Oakland, and proceeded north with the train to Middle Creek Station, or turn out. Here, after placing the train on the side track, the conductor with his gang of men, commenced working back south, clearing out the snow from the track. After completing this work through one cut of lesser dimensions, they entered the one where the fatal accident occurred. This is a cut of some four hundred feet in length, from ten to fifteen feet in depth in the center, and gradually sloping to or near a level at each end. After working through this cut at what the witnesses call flanging, and describe as cleaning the snow off of the inner surface of the rails, and having arrived at the south end of the cut, the men were ordered by Carnes, the conductor and boss, to return to the center of the cut, and widen the channel through the snow, which was barely wide enough to permit trains to pass. The sides of this channel were nearly or quite perpendicular, and the snow hard. A portion of the men had reached the center of the cut, and commenced work widening the channel, and some of them had not yet arrived at that point, when some of the latter discovered a train of cars coming around a slight curve which exists at or near the north end of the cut. This proved to be the regular south-bound passenger train, about nine minutes behind time, and running at a speed of twenty-five miles per hour. Eight of the men nearest the south end of the cut, and Carnes, who was also near the south end, succeeded in getting out. Six men, who had got to work near the center of the cut, including defendant in error's decedent, were run over and killed.

The questions then presented to this court by this branch of the case are, was the law correctly stated in the above instructions? and was it properly applicable to the facts as shown by the bill of exceptions? And they must both be answered in the affirmative.

The deceased was in the employment of the railroad

company, in the lowest grade of service, a day laborer. To him Carnes represented the company with all of its authority and power.. It was not for him to question the propriety or timeliness of any order coming from this source, unless its execution would carry him into palpable physical danger. Carnes, the conductor of the construction train, as well as boss of the gang of men, of course carried a watch, regulated by some standard of time common to the entire road. It was his duty, on whatever section of the road he might be with his train or gang of men, to know when any regular train was due at that point. The deceased, doubtless, carried no chronometer. Had he carried one it would have been regarded as an impertinence on his part to have claimed the right to regulate his work by it. So that, while it was his duty to go into the center of the cut and go to work when ordered by Carnes, it was gross negligence on the part of Carnes to order him there just as the train was due at that point. This was not only negligence on the part of Carnes, but it was negligence on the part of the railroad company whose vice-principal he was, and which could alone discharge its duty to this employee on this occasion through him.

It is not deemed necessary, nor does the time at my command admit of my going through and comparing the cases cited on either side as to the right of a servant to recover from the master for injuries received by him through the negligence of an overseer or upper servant placed over him by the master. While I had supposed the law to be pretty well settled on this subject, the earnest claim of counsel at the hearing almost induced me to doubt whether the rule as formerly held in Ohio had not been departed from or essentially modified even in that state. But I find upon examination that such is not the case, and that that which is held in the case of *Little Miami Railroad Company v. John Stevens*, 20 Ohio, 415, in 1851, is substantially held in all the cases up to and including *Railway v. Lavalley*,

36 Ohio St., 221, in 1880. I think the rule is best stated by Judge Ranny in the case of *Railroad Co. v. Keary*, 3 Ohio St., 201, in the following language: "It seems to us clear in a case like the present, that as between the company and those employed to labor in subordinate situations under the control of a superior, two distinct classes of obligations arise, the one resting on the company, and the other upon the servants, and both founded upon what each, either expressly or impliedly, has agreed to do in the execution of the contract. It is the duty of the company to furnish suitable machinery and apparatus, and, as they reserve the government and control of the train to themselves, and intrust no part of it to *these* servants, to control it and them with prudence and care. As the necessity of this prudence and care is constant and continuing, the obligation is performed only when it is constantly exercised, and they can not rid themselves of it by devolving this power upon the conductor. If they intrust him with its exercise, in the language of Judge Story, they in effect warrant his fidelity and good conduct. It is the duty of the servants to obey the orders of the superior thus placed over them, and to perform as he shall direct. If they fail to do this, and injure each other, they violate their engagements to the company, and are alone answerable for the wrongs they do. In such case there is no failure of the company to do what as between them and these servants it was understood they should do, when the servants entered the service. But they can not be made to bear losses arising from carelessness in conducting the train, over which their employers gave them no power or control, either separately or collectively, until we are prepared to say that justice and public policy require the consequences of duty omitted by one party to be visited upon the other, although stripped of all power to prevent such consequences."

I think the law thus established and laid down in Ohio

prevails substantially throughout the western states and will ultimately prevail everywhere.

Plaintiff in error also makes the point in the brief of counsel that " There is error in the record arising from the abuse of the privileges of counsel for the plaintiff in his closing argument to the jury. See affidavits." This point. is not made in the petition in error, but is contained in the motion for a new trial. At the foot of the bill of exceptions I find the following: " In the course of his argument in summing up the case Mr. Thurston made use of this 'anguage ' If the great mind of Andrew J. Poppleton had been defending this case, he would never have allowed it to come to trial.' Mr. Howe—'I object to any such statements; if I could reply it would make no difference; it is not fair to reserve to the close such arguments which can not be replied to by me.' The court—' The discussion must be confined to the issues.' Mr. Thurston—' An Omaha lawyer the other day got fifteen thousand dollars in Chicago for being put off a train.' Mr. Howe—' I object and except to the statement made by the counsel.' The court —' I think they are inadmissible.' Mr. Thurston—' I retract them; I make no statement in this case under objection.'" · There are also several affidavits as to what counsel said and did not say. There is also a copy of a journal entry which shows that but one of these affidavits were before the court when the motion for a new trial was considered and overruled. In permitting a record to be made up for presentation to this court different from that before him when he disposed of the motion for a new trial the learned court seems to have overlooked the true source of the jurisdiction of this court in cases of this kind. I cannot be mistaken in the view that we have no original jurisdiction in this case, but only jurisdiction to pass upon the alleged errors of the district court; and to do this intelligently the point should come before us as nearly as it was before it as possible under the circumstances. Again, I do not think

the case presented a proper one for the use of affidavits in any event. The misconduct charged occurred in open court; the attention of the court was immediately called to it and a ruling of the court had thereon. The facts and all of them could and should have been contained in the bill of exceptions, and certified by the presiding judge, and not left to be gathered from conflicting affidavits. But in any event, it is with the rulings of the district court that we have to do, and only care for the facts as the means of testing such rulings. These rulings on the matter now under consideration were not even excepted to by counsel, and for that reason, under well-known rules, cannot be considered here.

As to the point that the plaintiff in error is not liable in damages to plaintiff below for the injury to the decedent because it occurred on an Indian reservation, I do not think that it arises in this case; and if it does I think that the case of *Painter v. Ives*, 4 Neb., 122, is decisive of it, certainly it is so far as this court is concerned. See also *United States v. Yellow Sun*, 1 Dill, C. C. R. 271.

The point is also made that the reply of the plaintiff was insufficient to put in issue the new matter in the answer, etc. The reply is in these words: " Now comes the plaintiff and replying to the answer herein, denies each and every allegation of new matter therein contained." It does not appear that plaintiff in error took any exception to the reply before trial either by motion or otherwise. Nor did it claim upon the trial that the new matter contained in its answer was admitted for the want of a reply. So I do not see in what manner it can now avail itself of any benefit. from this point. As an abstract proposition, however, I agree with counsel in his condemnation of this style of pleading.

As to the final point, that there was error on the part of the district court in admitting in evidence the answers of certain witnesses to the questions therein specified, and in

overruling the objections of the defendant below thereto, also in sustaining the objections of plaintiff to questions put to the witnesses therein named by defendant in the court below, I have, after careful consideration, failed to find any material or prejudicial error. But to set out said questions and answers at length with my reasons and conclusions on them respectively would swell this opinion beyond the limits to which it must be confined.

No claim that the verdict was excessive was urged at the hearing, nor do I think that any such objection could be sustained.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.