Harrington v. Latta.

ANDREW HARRINGTON, PLAINTIFF AND APPELLEE, V. SARAH A. LATTA, WILLIAM S. LATTA, WILLIAM L. HOBBS, AND GEORGE S. SMITH, DEFENDANTS.

1. **New Trial.** A motion for a new trial must be made in the court below in order to entitle a party to a review of the case by petition in error, where the alleged errors occurred upon the trial of the cause.

2. **Trial:** SPECIAL FINDINGS. Where the findings of fact, found specially by a trial court, were not excepted to and are in favor of the party appealing, they will be taken as correct and will not be questioned by the supreme court.

3. **Judgment Lien:** FORECLOSURE OF OTHER LIENS: PARTIES. The filing of a transcript of a judgment of the county court in the office of the clerk of the district court, during the pendency of a suit to foreclose a mechanic's lien or mortgage, would only create an incumbrance upon the equity of redemption of the defendant in the foreclosure proceedings, and such judgment creditor would not be a necessary party to such action. The judgment lien, being created *pendente lite*, would be extinguished by such foreclosure.

APPEAL from the district court of Lancaster county. Tried below before POUND, J.

*Charles L. Hall* and *Charles O. Whedon,* for appellants, cited: *Godman v. Boggs,* 12 Neb., 13. *Lott v. DeGraffenreid,* 10 Rich. Eq., 346. *Badger v. Badger,* 2 Wall., 92. *Wood v. Carpenter,* 101 U. S., 135. *Martin v. Bank,* 31 Ala., 115. *Welton v. Merrick County,* 16 Neb., 83. *Lyon v. Sandford,* 5 Conn., 546. *Buchanan v. Griggs,* 18 Neb., 121.

*J. R. Webster,* for appellee, cited: *Coleman v. Burr,* 25 Hun, 239. *Fink v. Denny,* 75 Va., 663. *Thomas v. Beck,* 39 Conn., 241. *Hunt v. Spencer,* 20 Kan., 126. *Belford v. Crane,* 16 N. J. Eq., 271. *Card v. Robinson,* 2 Ill. App., 19.

REESE, CH. J.

This action was in the nature of a creditor's bill, commenced in the district court of Lancaster county. The allegations of plaintiff's petition were, in substance, as follow :

That on the 17th day of February, 1876, defendant William L. Hobbs obtained a judgment against defendant W. S. Latta, for the sum of $328.65, and $9.20 costs, amounting to the sum of $337.93, and on the 20th day of October of the same year, a transcript of said judgment was duly filed and docketed in the office of the clerk of the district court of Lancaster county, and entered on the proper records of said court. That executions had been entered on said judgments at short intervals of time from that day until the commencement of the action, and that judgment was in full force and effect, and wholly unsatisfied. That defendant William S. Latta, by the fraudulent conveyances and devices mentioned in the petition, had wholly rendered himself insolvent, and had no property whatever liable to execution to satisfy said judgment. That since the recovery thereof said judgment had, through mesne conveyances and assignments, been transferred to plaintiff, who was the owner and holder thereof, but that Hobbs and Smith were made defendants to the action, merely that all equities asserted for or by them might be barred. That the indebtedness upon which the judgment was based accrued in 1873, for money paid out in payment of taxes upon certain lands in Cass county belonging separately to defendants William S. Latta and Sarah A. Latta; and that when said indebtedness accrued said William S. Latta was a man of ample means, and as late as December, 1875, had real and personal property in the counties of Cass, Lancaster, and Butler, of great value, and was worth more than ten thousand dollars above all indebtedness and liabilities. That from said date to the

time of this action he had been and was a physician with a lucrative practice, from which, between the 1st day of March, 1876, and the 1st day of May, 1883, he had realized not less than $7,805.98, and from May 1st, 1883, to the time of the commencement of this action, the sum of $145 per month, amounting in all to over $11,620 of professional income since March 1st, 1876.    That on the 23d day of October, 1875, said William S. Latta was the holder of a mortgage interest upon certain grist-mill property of one John A. Latta, which was insured against loss by fire to secure said mortgage interest, and on or about the 23d day of October, the mill was burned, and the insurance money was paid to the defendant on the 17th of February, 1881, the amount so paid being $1,608.75, and which was deposited in bank to the credit of defendant Sarah A. Latta, the wife of defendant W. S. Latta.    That on the 28th day of March, 1881, she purchased of L. W. Billingsly and G. M. Lambertson certain real estate, described as two feet of lot " B " and lot " C " in Cropsey's subdivision of lots 16, 17, and 18, in block 55, in the city of Lincoln, paying therefor the sum of $1,608.75, and other moneys, the proceeds of the property of said William S. Latta, and paid into her hands, amounting to a total of $3,078.27.    The aforesaid property so by her purchased with the money of the said William S. Latta, the said Sarah A. Latta has ever since received and enjoyed the rents and income, amounting to over $75 per month since the 28th day of March, 1881.    That on the 20th day of November, 1875, said Wm. S. Latta was the owner of lots 9 and 10, block 88, in the city of Lincoln, having thereon a dwelling-house occupied by himself and family, and also had a two-story additional building on leased ground, and used as a store or business building, which was of the value of $1,500, which building he, without consideration, conveyed to one John S. Gregory, upon the consideration that the said Gregory should convey and set over the same

to defendant, Sarah A. Latta, which building said Latta caused to be removed to and placed upon said lots 9 and 10 and converted into two dwelling-houses, which were capable of producing, and did produce from and after the 1st day of January, 1878, the sum of $35 each per month; that the dwelling-house was partially occupied by the family of defendants, and partly rented in rooms, producing a further sum; and said two lots and three dwelling-houses had a rental value of over $100 per month, and were then worth the sum of $4,000, and are now worth more than $10,000, and of more value than he could hold as a homestead exempt from sale on execution. That on the 7th of February, 1876, for a pretended consideration of $3,500, but, in fact, without any consideration whatever, the Lattas conveyed the same to one R. M. Mozer, husband of the sister of Sarah A. Latta, who, on the 30th day of June, 1885, reconveyed the same, upon no consideration, to Sarah A. Latta, and the said William S. Latta continued to hold the said real estate and occupy the same, and that said deed was made only to cover up and becloud the title to said premises. And to further becloud and cover up the said property, said William S. Latta let sundry debts accumulate for material and labor in the refitting of the two dwelling-houses placed thereon, and permitted mechanics' liens to be held upon said premises, and without claiming the part of the same on which the dwelling-house was situated, allowed judgment to pass against the whole two lots in an action brought by one Edwin H. Tuttle, in the district court, against them and others, and which suit was commenced on the 30th day of July, 1876, judgment being rendered May 25, 1877, and the sale of the property made by the sheriff June 26, 1877, to Charles T. Boggs and S. W. Little, for $1,601, subject to the mortgage of $475, and which sale was confirmed October 5, 1877, without opposition. That on the same day the premises were conveyed by the sheriff to said Little and

Boggs, and were on the same day, by them, conveyed to defendant Sarah A. Latta, for a pretended consideration of $180, less than they had that day paid, or pretended to pay, at said sale for said property, and subject to a mortgage of $475.    It is averred that said sale was colorable only, and that Sarah A. Latta paid nothing, in fact, for the title of the property, and that on said day Sarah A. borrowed, or pretended to borrow, of one Martin H. Brush, an inmate of their house and member of their family, the sum of $1,000, which sum was that day by them secured to Brush on said property, and remained a lien thereon until February 27, 1883.    That the mortgage for $475 was not paid or discharged until the 18th day of August, 1883, and the premises were, aside from the family dwelling-house, producing rents in the sum of $50 per month or more, so that said premises in and during the term of said mortgages produced rents in the sum of or more than $3,100, and granting the sum so assumed to appear to have been borrowed of Brush, with interest at twelve per cent per annum on both said mortgages for the whole term, and insurance and taxes included, and that no more than $516 being invested by Sarah A. in the purchase of the premises, and that the premises so occupied as a homestead are of much greater value than $2,000, to-wit, of the value of $10,000, and all said conveyances and proceedings were a shift and device to cover up and becloud the title of said premises, and hinder and delay the creditors of William S. Latta.    That plaintiff is entitled to have the proceedings and conveyances annulled and set aside and held for naught, and to have the premises appraised for sale and sold for a greater valuation than $2,000, the limit of the homestead exemption.    That on the 22d day of January, 1876, defendants William S. Latta and Sarah A. Latta, by their deed, conveyed to William Eikenbury, the brother of Sarah, certain lands situated in the county of Butler, described as the south-west quarter of section 5,

the south-west quarter of section 8, and the north-west quarter of section 17, all in township 13 north, of range 3 east, then of the value of $3,600, for the false and recited consideration of $2,160, without any consideration, in fact, paid, and said deed was thereupon duly recorded, and said Eikenbury soon after, by his deed dated the 26th day of September, 1876, reconveyed said lands to Sarah, for the falsely recited consideration of $2,000, by her paid, whereas, in fact, no consideration whatever was by her paid, but that the deed, which was for the fraudulent purpose of clouding and obscuring the title, was withheld from record until March, 1880. That on the 7th of July, 1882, Sarah A. Latta sold the north-west quarter of section 5, for the sum of $1,680, which was received by her. That the remainder of the land is now of the reasonable value of $6,400. That on the 24th day of August, 1885, plaintiff caused two certain executions to issue out of the district court upon his judgment, one directed to the sheriff of Lancaster county, and one directed to the sheriff of Butler county, and the same day the sheriff of Lancaster county levied his said writ on lot " C," and two feet off of lot " B," in Cropsey's subdivision, etc., and also on lots 9 and 10 in block 88, in the city of Lincoln, and the sheriff of Butler county levied his said writ on the south-west quarter of section 8, and the north-west quarter of section 17, as above described, but the real estate all being held with the legal title in Sarah A. Latta, no sale at execution could be had, and the executions were each returned with indorsement of the levies, but without sale of the property until the title thereof could be legally determined.

It is further alleged that although said William S. Latta was a man of large means at the time plaintiff's indebtedness accrued, and up until December, 1885, and was worth at least $10,000 in property subject to execution, in the city of Lincoln, and over and above liabilities and exemptions, yet he, being then somewhat embarrassed by some cer-

tain and some contingent liabilities, about that time began by
ccrain sundry fraudulent devices to obtain transfers and
conveyances of his property to his wife, Sarah A., without
consideration, and with intent to hinder, delay, and defraud
his creditors, and to that end on or about the 22d day of
January, 1876, the three quarter sections of land in Butler
county were conveyed to said William Eikenbury, then
of the value of $3,600, without consideration, and soon
thereafter reconveyed to Sarah, which deed was by her
withheld from record, and from one of said tracts she has
received $1,680, and still holds the remainder, now of the
value of $6,400, and on or about the 7th day of February,
1876, the said defendants conveyed lots 9 and 10 in block
88, in the city of Lincoln, to said Rasmus Mozer, then of
the value of $3,500, and now of the value of $10,000, and
which said Mozer, in June, 1885, reconveyed to the said
Sarah, and also, through forms of mechanics' lien foreclos-
ure, the sale by conveyance to her said property for a pre-
tended consideration of $1,991, and for which she never
paid more than $516, and from which she is constantly
receiving large rents and incomes, amounting since October,
5, 1877, to more than $5,640 and to more than $3,600
over and above the $1,475 of incumbrances under which
she took and the $516 which she might have paid. That
on or about the 12th day of February, 1876, said W. S.
and Sarah Latta exchanged certain lands in Cass county,
the property of W. S. Latta, of the value of $1,800, to one
Worl, and in exchange received from said Worl the con-
veyance to Sarah A. of certain lands in Lancaster county,
of the value of $1,800, beside about $375 of incumbrance
then existing thereon, and which land in Lancaster county
she, about July 18, 1883, sold to one Auckerman for the
sum of $2,600, which was paid to her. That on or about
the 12th day of March, 1876, defendant William S. Latta,
without any consideration, turned over to said Sarah A.
Latta the sum of $840 of indebtedness due him from his

brother, and that on the 17th of February, 1881, he transferred to, and placed to the credit of his wife, in the bank, the sum of $1,608.75, then received from the insurance policy above referred to, and which money was invested by her, on the 28th day of March, 1881, in lots 9 and 10 in block 88, in the city of Lincoln, and in which property she never invested of her own money, more than $1,469.82, it being then of the value of $5.500, and from which she has ever since derived rents at the rate of $75 per month, amounting to not less than $3,875, and in addition to which, from March 1st, 1876, to the time of commencing this action, said W. S. Latta has been a practicing physician with lucrative practice, but he has, notwithstanding, turned over to his wife all his professional earnings and income, so as to keep the same from the reach of his creditors, and the same, in each year, computing from March 1st to February 28th inclusive, have been: from March 1, 1876, to February 28, 1877, $440.-21; from March 1, 1877, to February 28, 1878, $945.95; from March 1, 1878, to February 1, 1879, $926.69; from March 1, 1879, to February 28, 1880, $971.52; from March 1, 1880, to February 28, 1881, $1,103.52; from March 1, 1881, to February 28, 1882, $1,391.83; March 1, 1882, to May 1, 1883, $2,026.17; making a total $7,805.39.

It is further alleged that the income from defendant's professional services, from May 1, 1883, to the time of the commencement of this suit, amounts to not less than $145 per month, so that the total amount of professional services and the real estate and money transferred to S. A. Latta amounts to the sum of $9,515, and that the value of the real estate being $24,400, and producing rents, exclusive of the homestead, to the amount of $1,800 per year, the incumbrances thereon being only of the amount of $6,000. It is alleged that in March, 1874, after the indebtedness of plaintiff accrued, that defendant, Sarah A.

Latta, owned, of her separate property, eighty acres of land in Cass county, and certain chattel property, all of the value of about $4,370, which land was then, with one hundred and twenty-one acres of adjoining lands, worth $30 per acre, the property of W. S. Latta, which was incumbered to the extent of $2,000. They traded for the three quarter sections of land in Butler county, and the building subsequently converted into the two dwelling-houses and placed on lots 9 and 10 in block 88, in the city of Lincoln, and a stock of merchandise, to the amount of $2,500, of all of which said Sarah took title, so that in equity, to some extent, said Sarah may have become a creditor of her husband, but to no greater extent than the actual value of the eighty acres subject to its proportion of the incumbrances.

It is further alleged that during the year 1884, the better to sustain the fraudulent transfers of the property, the said William S. Latta fabricated certain written instruments purporting to be contracts made between himself and his wife, one a note bearing date March 9, 1884, due in one day after date, with interest at ten per cent, and which note bears three endorsements of amounts paid thereon, dated respectively, January 22, 1876, for $1,500, February 12, 1876, for $1,000, March 12, 1876, for $840; the other instruments in two copies bearing date on or about March 1, 1886, with erasures thereon, changing said dates to 1876, and both copies signed by said William and Sarah, in which, in consideration of his therein recited and enjoyed considerations, she contracted to maintain the family, and he contracted to pay to her his professional incomes, by one copy of said contract $60 per month for three years thence ensuing, $75 per month for the second three years, and $100 per month for the time thereafter to May 11, 1883; and by the other copy of said contract, by erasures therein made, changed the periods from three to two years, it was provided that he should pay her $60 for two years,

$75 for two years, and $100 per month for the remaining period, so lengthened two years by such erasures. It is alleged that all of the conveyances, contracts, and payments referred to were fraudulent, and made with the intent to hinder and delay the creditors of William S. Latta, and especially the plaintiff and his assignors, in the collection of their debts, and the relief demanded is, that the conveyances be held null and void as against plaintiff, and that the lands described be declared subject to his judgment, and that an accounting may be had and stated of the mutual dealings of the defendants Latta, and of all the personal properties of Sarah A., showing the money and property in her hands received from her husband, and that all may be held liable for said plaintiff's demands and for general relief.

To this petition defendant Smith filed answer, averring a due recovery of the judgment by Hobbs against William S. Latta, and the assignment to plaintiff, the want of knowledge of the alleged frauds, and the denial of any claim or interest in the judgment.

Defendant Hobbs filed substantially the same answer.

Defendants William S. and Sarah A. Latta filed their answer, by which they admitted the recovery of the judgment in favor of Hobbs, at the time alleged, and the docketing of the same in the district court, but deny the ownership of plaintiff, and allege that neither the plaintiff nor Smith was ever the owner thereof, but that the same belongs to William L. Hobbs, and 'that there was then pending in the same court an action between defendant W. S. Latta and said William L. Hobbs, wherein said Latta as plaintiff sought to have said judgment applied on the direct payment of a certain judgment rendered in the district court against said Hobbs, and owned by William S. Latta. All the allegations in the petition are denied.

The allegations of the answer by which it is alleged that the judgment is still owned by Hobbs are denied by the reply of Hobbs and Smith.

Plaintiff filed reply denying all the averments of the answer of the Lattas.

By what is called a supplemental answer of the Lattas, the bar of the statute of limitations is presented and the payment of the judgment in favor of Hobbs, which is alleged to be the property of the plaintiff, with the exception of $180.

In the reply subsequently filed by plaintiff he denies the allegations concerning the limitation, and alleges that defendants are estopped by the adjudication and judgment of the county court from setting up their alleged defence thereto.

The trial was had by the court, and upon request of plaintiff the court found especially its conclusions of fact and of law, which were as follows:

"1. The court finds that the plaintiff was, at the commencement of this action, and still is, the owner and holder of the judgment rendered in favor of William L. Hobbs against William S. Latta, in the county court of Lancaster county, February 17, 1876, and that the same is still in full force, unpaid and unsatisfied.

"2. The court finds that in the year 1874 the defendant, William S. Latta, was indebted to his wife, the defendant Sarah A. Latta, in the sum of between $5,000 and $6,000.

"3. The court finds that Eikenbury bought the land in Butler county of said William S. Latta, in good faith and for a valuable consideration, and that he afterwards sold and conveyed the same, in good faith and for a valuable consideration, to said Sarah A. Latta; that said William S. Latta applied the consideration received by him from the sale of said lands to Eikenbury on the indebtedness owing by him to his said wife, Sarah A. Latta.

"4. The court finds that the sum of $1,608.75 insurance money referred to in the petition was applied by said William S. Latta to the payment of an indebtedness owing

by him to one Martin H. Brush, and that said Brush loaned said sum to said Sarah A., who invested the same, together with other moneys, in the purchase of said lots "B" and "C," in Cropsey's subdivision, referred to in the petition; that said Sarah A. paid the purchase price of said lots and repaid said loan to Brush.

"5. The court finds that there was no completed sale of said lots 9 and 10 to said Mozer; that said William S. made the conveyance to said Mozer of said lots in expectation that Mozer would purchase and pay for the same, but that said Mozer did not make the purchase and paid no consideration for such conveyance, and that such conveyance has always been considered and treated by the parties thereto as of no validity and as of no force or effect.

"6. The court finds that the liens on said lots 9 and 10 were *bona fide* and valid liens, and that the suit brought to foreclose them was brought and prosecuted in good faith by the owners and holders thereof, and for the sole purpose of enforcing such liens, and that said lots were sold under the decree rendered in said suit, and such sale confirmed in good faith for like purpose.

"7. The court finds that said lots 9 and 10 were purchased at said sale by the plaintiffs in said suit, or some of them, and the sheriff executed to them a deed to said lots on the day of the confirmation of said sale, and said purchasers on the same day conveyed said lots to said Sarah A. in consideration of the amount of their purchase price, together with interest, costs, and expenses incurred in said suit, and subject to a certain mortgage thereon of $475; that the said Sarah A. obtained a portion of the money, to-wit, $1,000, with which to pay for said lots from said Brush, to secure which she gave him a note signed by herself and William S., which note was afterwards secured by a mortgage on said lots; that said Sarah A. paid the purchase price of said lots and has also paid said mortgages.

"8. The court finds that William L. Hobbs, the then

owner of said judgment of Hobbs against Latta, was not made a party to such foreclosure suit.

"9.    The court finds that said William S. and Sarah A. Latta have, ever since 1874 and prior thereto, continuously occupied and still occupy said lots as a homestead, and, with the exception of the title acquired by the purchasers at such foreclosure sale, either said William S. Latta or Sarah A. Latta has during all the time aforesaid owned and held the title to, and still owns and holds the title to said lots.

"10.    The court finds that said William S. and Sarah A. Latta made and entered into a contract or contracts by which he agreed to turn over to her his professional earnings, in consideration that she would maintain him and his family; that said contract or contracts was fraudulent and made for the purpose of placing such earnings beyond the reach of his creditors; that said contract or contracts was acted upon by the parties thereto, and that between the years 1875 and 1883 said William S. earned in his profession and turned over to his said wife, under said contract or contracts, the several sums of money alleged in the petition, amounting in the aggregate to the sum of $7,805.89; that it does not appear that any of said money was used in the purchase of said real estate or any part thereof by said Sarah A., nor does it appear how much money was usual or necessary to maintain said William S. and his family.

"11.    The court finds that at the time said Sarah A. purchased said lots 9 and 10, to-wit, October 5, 1877, there were three houses situated thereon, from two of which she has received an income from rents in the sum of about $55 per month, and has also received some income by keeping boarders in the third house, in which said William S. and his family resided, and that she has also received some income from a farm known as the Worl farm, owned by her and which was bought by said William S. from

one Worl, and the deed thereto, dated February 12, 1876,. made to Sarah A., and the consideration, $1,500, was credited on said indebtedness owing by said William S. to said Sarah A.; that on July 2, 1882, she received $1,680 from the sale of a quarter section of the Butler county land.

"12. The court finds that the indebtedness on which said judgment of Hobbs against Latta was recovered was, contracted in the year 1873.

### · " CONCLUSIONS OF LAW.

"1. As a conclusion of law, the court finds: First,. That said judgment of William S. Hobbs against William. S. Latta is a lien on said lots 9 and 10, but that the same cannot be enforced by a sale of said lots while they are owned and occupied by said William S. and Sarah A. Latta as a homestead, and that said lots are now owned and occupied by them as a homestead.

"2. That the plaintiff is entitled to a decree adjudging said judgment to be a valid and subsisting lien on said lots 9 and 10, but is not entitled to any of the other remedies prayed for in petition."

The judgment and decree of the court was, that plaintiff " Is entitled to and has a valid and subsisting lien by his judgment, from the 20th day of October, 1876, in and to said lots 9 and 10 in block 88 of the city of Lincoln, for security and satisfaction of said judgment, amounting to the sum of $337.93, with interest thereon at the rate of ten per cent per annum from the 17th day of February, 1876, and costs to accrue, which is, however, subject to the right of homestead of the defendants, William S. and Sarah. A. Latta, which had prior thereto attached to said real estate, and that plaintiff recover of and from said defendants, Sarah A. Latta and William S. Latta, the costs of this action," etc.

From this judgment defendants Latta appeal. Pending

7

the appeal in this court, and on the 19th day of October, 1887, plaintiff filed his petition in error, by which he alleges sundry errors committed by the district court in its findings and judgment.

We take it to be the well-established law of this state that a motion for a new trial is necessary to obtain a review of the case on error in this court, and that the errors relied upon should have been specifically pointed out to the district court.    *M. P. Railroad v. McCartney*, 1 Nebraska, 398.    *Cropsey v. Wiggenhorn*, 3 Id., 117.    *Stanton County v. Canfield*, 10 Id., 390.    *Russell, Moderator, v. State, ex rel. Armor*, 13 Id., 68.    *Cruts v. Wray*, 19 Id., 581. `

There were no exceptions taken by plaintiff to the findings of fact or conclusions of law as found by the court. Therefore the petition in error need not be noticed.

The finding of fact by the district court upon the issues of fact involved in the cause must be taken as final, and they will not be discussed.   By them it is found that in 1874 defendant, W. S. Latta, was indebted to his wife in the sum of $5,000 or $6,000; that the Butler county lands were purchased by Eikenbury of W. S. Latta, for value and in good faith, and that he afterwards conveyed the same, *bona fide* and for value, to defendant, Sarah A. Latta; that the $1,608.75 insurance money referred to in the petition was applied by W. S. Latta to the payment of the indebtedness owing by him to Brush, and that Brush loaned it to Sarah A. Latta, who invested it with other moneys in the purchase of the real estate above referred to, in Cropsey's subdivision, and that Sarah A. Latta paid the purchase price of said land, and repaid the loan to Brush; that the conveyance of lots 9 and 10 to Mozer was made in contemplation of a sale to him, but that the sale failed and that the conveyance to him has always been considered and treated by the parties thereto as of no validity; that the liens on lots 9 and 10 were *bona fide* and valid, and that the suit brought to foreclose them was

brought and prosecuted in good faith by the owners and holders thereof, and for the sole purpose of enforcing them, and that said lots were sold and the sale confirmed in good faith; that the transfer from the purchasers at the sheriff's sale to Sarah A. Latta, was in consideration of the amount of the purchase price paid by the purchaser at sheriff's sale, together with interest, costs, and expenses incurred, and subject to the mortgage of $475 then on the property, and that Sarah A. Latta obtained $1,000 of the money which she paid for said lots from Brush, secured by a mortgage; and that the lots have ever since 1874 been occupied as a homestead by defendants, and with the exception of the title acquired by the purchaser at sheriff's sale, either W. S. or Sarah A. Latta has during all the time owned and held the title. It is further found that the indebtedness on which the judgment of Hobbs and owned by plaintiff was based was contracted in the year 1873; that plaintiff was the owner of the judgment at the time of the commencement of this suit, and that Hobbs, who was then the owner of the judgment, was not made a party to the proceeding to foreclose the mechanics' liens; that W. S. Latta and Sarah A. Latta entered into a contract by which he agreed to turn over to her his professional earnings in consideration that she would maintain him and his family, and that said contract was fraudulent, and that the amount realized by Sarah A. Latta from said contract was as alleged in the petition, to-wit: $7,805.89, and that it does not appear that any of said money was used in the purchase of said real estate, or any part thereof, by Sarah A., nor how much money was usually necessary to maintain said William S. and his family; and that at the time said Sarah A. purchased lots 9 and 10, which was October 5, 1877, there were three houses situated thereon, from two of which she had received the rents, etc.

To the mind of the writer these findings must be conclusive as to the *bona fides* of the real estate transactions,

and no further attention need be given to that part of the case.

Our attention will be next directed to the conclusions of law, the first of which is that the judgment of William L. Hobbs against William S. Latta is a lien on lots 9 and 10. To this we cannot agree. Referring again to dates, it will be found that the judgment was obtained in the county court on the 17th of February, 1876. No transcript of this judgment was filed in the district court until October 20th, of the same year, and at that time the foreclosure proceedings were pending, having been instituted on the 3d day of July previous.

It is perhaps true that Hobbs was not made a party to that proceeding, neither was it necessary that he should be. The judgment in favor of Hobbs could not be a lien upon the premises until it was filed in the district court. At the time of the commencement of the foreclosure proceedings, no such judgment was on file, therefore he had no lien to be effected by the suit.

If the plaintiff's judgment was foreclosed in that action, as it was, then the judgment could not become a lien on the premises, however fraudulent the contract between the Lattas concerning the professional services of W. S. may have been, and no amount of fraud in that behalf could by any possibility have rendered it such.

In *Stout v. Lye*, 103 U. S., 66, it was held, Chief Justice Waite writing the opinion of the court, that the procuring of a judgment during the pendency of a suit to foreclose a mortgage was in legal effect no more and no less than an incumbrance of the equity of redemption by the mortgagor, under the operation of judicial proceedings which had been instituted against him to enforce the payment of a debt he owed, and that as such incumbrance was created *pendente lite*, the judgment creditor was bound by the foreclosure proceedings, although not a party to the action. See also *Comer v. Dodson*, 22 O. S., 615. *Cra-*

*dlebaugh v. Pritchett*, 8 Id., 646. Wiltsie on Mortgage Foreclosures, 159. Thomas on Mortgages, 497, Sec. 765. Sec. 85, civil code (Compiled Stat., 1885). *Wright v. Crittenden*, 11 Neb., 341.

We therefore conclude that the conclusion of law, that the Hobbs judgment was a lien upon the premises, was incorrect and not sustained by the facts found by the sixth and seventh findings of fact.

It follows that in this respect the decree of the district court must be modified, which is done, and a decree will be entered in this court dismissing plaintiff's bill.

DECREE ACCORDINGLY.

THE other judges concur.