W. C. NORTON v. NEBRASKA LOAN & TRUST COMPANY.

FILED MAY 2, 1894. No. 4496.

1. **Review: QUESTIONS IN APPELLATE COURT.** Where a case is brought to this court on petition in error, to review the decision of the lower court on a motion of a purchaser to vacate the confirmation and set aside a judicial sale of real estate, only such questions as were presented in the lower court, or to which its attention was called and its ruling taken or requested, will be reviewed or considered in this court.

2. **Judicial Sales :** CAVEAT EMPTOR. The former decision in this case (*Norton v. Nebraska Loan & Trust Co.*, 35 Neb., 466) approved and adhered to.

REHEARING of case reported in 35 Neb., 466.

*Reese & Gilkeson* and *S. S. McAllister*, for plaintiff in error.

*Steele Bros., contra.*

HARRISON, J.

An action was commenced by the Nebraska Loan & Trust Company in the district court of Butler county to foreclose a mortgage on certain real estate situated in said county. Decree was rendered foreclosing the mortgage, order of sale issued, sale made and confirmed, and a motion made by the purchaser to vacate and set aside the sale and confirmation. There also appears to have been a motion by the principal defendant (the mortgagor) for an order on the purchaser to compel him to pay the amount of his bid into court. The motion to vacate the sale was overruled by the lower court, and Norton, the purchaser at the sale, ordered to pay the amount of his bid, as reported by the sheriff in his return to the order of sale, into court. From this order Norton prosecuted a petition in error to this court, and on the first hearing here the ruling and decision of the lower court was sustained and affirmed, NORVAL, J., writing the opinion; MAXWELL, the then chief justice, dissenting. POST, J., having made the order in the lower court, over which he was then presiding judge, did not participate in the hearing or decision in this court. The opinion of NORVAL, J., affirming the action of the lower court, will be found in *Norton v. Nebraska Loan & Trust Co.*, 35 Neb., 466, and the dissenting opinion of MAXWELL, C. J., commencing on page 474 of the same volume of reports. Each of these opinions contained a full and

sufficient statement of the case and of the facts necessary
to an understanding of the points raised and argued, and
we will make no further statement here. Norton made a
motion for a rehearing, which was granted, and the case
was reargued in briefs filed by counsel for either party.

The main contention in the case is over the question of
the application of the rule of *caveat emptor* to judicial
sales. The counsel for Mr. Norton, in the briefs filed at
the rehearing, contended that there is a well settled and
marked distinction between sales made under a decree of
foreclosure (as was the one in the case at bar) and sales
made by virtue of an execution issued to enforce a judg-
ment at law. That in the former the court is making the
sales and the officer acting under its special direction and
supervision, and in the latter not, or not so directly.
These sales, under our Code, are made under the same rules
as prescribed by statute in regard to notice, appraisement,
offer, return or report of sale, and confirmation of the same,
the only distinction or difference that we remember, or can
discover, being that the one is made under and by virtue
of an order issued to enforce a decree in an action, wherein
a specifically described tract of land or piece of property is
sought to be subjected to the payment of a debt which it
has been mortgaged to secure; and in the other, the exe-
cution is issued to enforce the collection of a judgment, to
be levied on any property of the debtor, and is directed
against no certain or described tract or piece of property,
and for this reason it is claimed the purchaser is put to a
more direct and special inquiry, as the record in the case in
which the execution is issued will not furnish any informa-
tion regarding the property to be sold, and the papers and
records in the mortgage foreclosure case will. In a large
number of cases; in which decisions have been made in refer-
ence to releasing purchasers from their bids or forcing them
to complete purchases, the distinction is clearly and definitely
raised and established that sales of particularly described

tracts or pieces of property by orders of the court, for any purpose, or in any of the many different proceedings in which such sales may be had, being held more directly within the province of the court and under its immediate supervision, and the officer acting its agent, the sales being considered as made by the court, are judicial sales proper, and as such to be distinguished from sales under execution, and that the doctrine of *caveat emptor* will not be applied to what, according to these decisions, are judicial sales proper, or sales by the court, in its full force and vigor, but will be given a somewhat modified or relaxed effect and each case be decided or determined as seems best and wisest to the chancellor or judge who decides it, under the facts and circumstances developed in it.    Whether this is the truest and most equitable doctrine has been much mooted and has been, and is a field, fruitful of much controversy; but we are fully satisfied that there is no necessity, and possibly very slight, if any reason, and it serves no useful purpose, to distinguish between the sales in any degree or extent and that in the interest of uniformity and certainty (since there appears no real or substantial distinction or difference), that we shall not arbitrarily establish any, and that a true business course and method with regard to judicial sales will be best subserved if the doctrine of "*caveat emptor*" as to such sales is allowed and held to prevail.    It will undoubtedly, we think, be better that when a sale has been made there shall exist some certain rule by which the rights of the parties can be truly and equitably determined, measured, and adjusted than that every sale be left open to attack for any fancied error, objection, or grievance, for there is no more fruitful source of vexatious and unsatisfactory litigation than confirmation and kindred proceedings.    It always opens a field for the labors of the affidavit maker.    In the Bible it is said: "Of making many books, there is no end."    We have often thought, when hearing one of these proceedings on

affidavits, that of making many affidavits, there is no end. The certain and definite rule cannot, we think, but result in justice to the greatest number; and if so, we have then accomplished all that can be expected of the laws and rules of men for men.

The motion to vacate the order of confirmation and set aside the sale, filed in the lower court, contained but two reasons for so doing, one being that the property was not advertised as the law requires, and the other that the purchaser was deceived by the sheriff and clerk of the district court as to liens and incumbrances and as to the title he would acquire by purchase at the sale, and did not raise the question of whether any bid was made by Norton, and if so, whether the bid was a conditional one, and this latter question is not presented in either the motion for a new trial or the petition in error, and, in accordance with the well established rule of this court, it cannot be considered here. (*Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb., 263; *Cruts v. Wray*, 19 Neb., 581; *Harrington v. Latta*, 23 Neb., 98; *Hurford v. Baker*, 17 Neb., 446. See, also, *Smith v. Spaulding*, opinion filed May 2, 1894, in which it was held: "Parties will as a rule be restricted in this court to the theory upon which the cause was prosecuted or defended in the court of original jurisdiction.")

The only point to be considered in the case then is whether the doctrine of "*caveat emptor*" is to be applied. The query arises here, was Norton deceived by the sheriff and clerk of the district court, or did he have any right to rely on, or was he warranted in relying upon, the statements made by them, with reference to the title of the property, or was he negligent in not searching the records of the case and of the county and ascertaining the condition of the title of the land for himself? Clearly it cannot be contended that the clerk can verbally warrant the title or vouch for it, and the sheriff is not and cannot be made the agent of the court for any such purpose; he makes the sale as or-

dered in the decree, and the writ, if any, issued to him. In this case the notice of sale stated that the land was to be sold subject to the lien of $3,000, which is now the subject-matter of the complaint and objection of Mr. Norton, and the writ in the sheriff's hands, under which the sale was being made, disclosed the same fact. Any reasonable diligence, the smallest in degree, on the part of Mr. Norton, would have discovered to him the condition of the title of the property offered for sale, of which he now complains, and because of which he asks to be relieved of his purchase. He had no right to rely upon the statements of the officers who might or might not have correct knowledge or information of the title, but should have examined or had the title examined before making his bid. A number of authorities are cited in the former opinion in support of this doctrine, but we will here cite a few more which we have examined. In Freeman on Void Judicial Sales, section 48, page 83, it is said : " In some of the states, ' *caveat emptor* ' is the rule of all execution and judicial sales. Each bid is made for such title as the defendant, ward, or decedent may have, and is, therefore, binding whether either had title or not." (See, also, *Neal v. Gillaspy*, 26 Am. Rep. [Ind.], 37, and note; Rorer, Judicial Sales, 168, 169; *McManus v. Keith*, 49 Ill., 388 ; *Sackett v. Twining*, 57 Am. Dec. [Pa.], 599 ; *Barron v. Mullin*, 21 Minn., 374 ; *England v. Clark*, 4 Scam. [Ill.], 486 ; *Dresbach v. Stein*, 41 O. St., 70.)

We have examined the authorities cited by the counsel for plaintiff in error in the briefs filed on rehearing, and while they are in point and entirely applicable and sustain counsel in the position taken, we are satisfied that the rule is that a purchaser at a judicial sale buys at his peril in respect to the title, and it is his duty to search and ascertain the condition of the title for himself. Under the facts and circumstances surrounding the sale in this case as disclosed by the record, and the rule of law pertinent thereto, there

was no excuse for the purchaser, and he has not shown himself entitled to any relief. The former decision in the case is

REAFFIRMED.

POST, J., and RAGAN, C., offered no opinion.