DANIEL B. TAYLOR, APPELLEE, V. AMERICAN RADIATOR
COMPANY, APPELLANT.

FILED JANUARY 16, 1913. No. 17,100.

1. **Contracts**: PERFORMANCE: STATUTE OF FRAUDS. An oral contract for personal services which have been performed for almost the full time of the period for which they were engaged cannot be successfully questioned after they have been performed, because alleged to be within the statute of frauds.

2. **Appeal**: CONFLICTING EVIDENCE. The length of plaintiff's service was made to depend upon whether he "made good"; if he made good his employment was to continue for a period of three years, and he was retained in service three years lacking ten days, and increased compensation was voluntarily paid him after the first year. *Held*, That, in view of the conflicting evidence, the jury were authorized in reaching the verdict announced, and that it would not be set aside where it was within the limit permitted by the testimony of the witnesses.

3. **Trial**: INSTRUCTIONS. The instruction complained of in appellant's brief examined, and *held* not to be prejudicially erroneous.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Sullivan & Rait,* for appellant.

*G. W. Shields* and *Robert J. Shields, contra.*

HAMER, J.

The plaintiff, Daniel B. Taylor, sues to recover an alleged remainder due for wages. He claims to have been employed by the defendant, the American Radiator Company, as a traveling salesman. He alleges that he began work on the 15th of January, 1906. The evidence seems to show that he worked for the defendant three years lacking ten days. He alleges he was to receive for the first year a salary of $75 a month and expenses; for the second year a salary of $100 a month and expenses; and for the third year a salary of $125 a month and expenses. There are also some items of alleged extra expense money. The plaintiff also sets up that the defendant holds his note for $79.17, and prays to recover a balance of $555.85, and interest from January 15, 1909, and costs.

The radiator company answered, admitting the employment of the plaintiff, and alleging that he continued in the employ of the defendant at the rate of $75 a month from the 15th day of January, 1906, to the 1st day of June, 1907; that from January 15, 1906, to June 1, 1907, the defendant paid the plaintiff $1,237.50, being the sum of $75 a month for each month during that period; that on the 1st day of June, 1907, it was agreed between the plaintiff and the defendant that the plaintiff should be paid $91.66 a month, and that the plaintiff entered upon said employment for the sum of $91.66 a month, and continued in it from the 1st day of June, 1907, until the 1st day of January, 1909; that from the 1st day of June, 1907, to the 1st day of January, 1909, the defendant paid the plaintiff $1,741.75, or $91.66 for each month during that period; that on the 5th day of January, 1909, it was agreed between the plaintiff and the defendant that the plaintiff's employment should terminate, and that the plaintiff should not thereafter be employed by the defendant in any capacity whatever; that on the 5th day of January, 1909, plaintiff and defendant had a settlement, and that at the time of the settlement it was agreed that the plaintiff was

indebted to the defendant in the sum of $125 because of loans and advancements made to him; that on said 5th day of January, 1909, it was agreed that the plaintiff should have a credit in the sum of $45.83, being one-half of a month's salary, and that the said sum would be received by the plaintiff in full settlement of all services rendered; that the plaintiff, after receiving credit for said sum of $45.83, was still owing the defendant a balance of $79.17; that on said January 5, 1909, the plaintiff executed and delivered his note to the defendant for the sum of $79.17, and the same was received as a full and complete settlement; that the note was dated January 5, 1909, and was made payable on demand; that there never was any agreement that the defendant should pay the plaintiff $100 a month and expenses for the second year; that it was never agreed that the defendant should pay $125 a month and expenses for the third year; and the defendant denies that the plaintiff expended $10.75 for its benefit on the 10th day of October, 1909; and also denies that the plaintiff spent for its benefit $3.25 on the 1st day of January, 1909. The defendant alleges that it is the holder and owner of plaintiff's note for $79.17; that it has demanded payment thereof and the same has been refused; and it prays judgment against the plaintiff for $79.17, with interest at 7 per cent. per annum from the 5th day of January, 1909, and costs.

The reply denies each allegation of new matter; denies that any new contract was entered into on June 1, 1907; and denies that the plaintiff ever entered into a contract to receive $91.66 a month after June 1, 1907; and denies that he continued in the employ of the company for that sum a month, and also makes other denials. The plaintiff admits making the note for $79.17 set forth in the defendant's answer.

Mr. Arthur H. Williamson testified that he succeeded Crary as the Nebraska manager of the defendant company; and also that he dismissed Taylor from the service of the company, and that the note was given in payment

for the balance of a loan made to Taylor, "plus a certain traveling fund." Whether this note was given in final settlement of a balance admitted to be due from the plaintiff to the defendant might well be in doubt but for the testimony of the witness Williamson, who confines it to a part of the transaction. He testified on cross-examination: "We simply settled up those two notes by taking this other note. *That is all we settled.*" This would seem to exclude any claim of actual final settlement between the parties. Crary seems to have been in charge of *the affairs of the radiator company.* Herman I. Lund testified that Crary said that he would pay $75 a month the first year, and give Taylor a raise to $100 a month for the second, and $125 a month the third year, provided that he made good; that after Taylor had been working there a while Crary told him that Taylor was doing his work well. The plaintiff testified that, before entering upon his employment with the company, Crary told him that there was an opportunity for him if he would work. "He told me it was not an easy job; that if I *made good* the first year he agreed to pay me so much; if I didn't he could not use me." The plaintiff also testified that Crary told him that if he did not make good he would soon find it out. He also testified that he saw James Sheahan and explained the agreement with Crary, and that as yet he had not been paid the money, and that Sheahan told him: "You are worth more money and you are going to get it."

It is perhaps apparent that the plaintiff "made good," because the defendant (1) kept him in his employ three years lacking only 10 days, (2) voluntarily began to pay him more money, and (3) because Crary, who employed him on behalf of the company, recommended in a letter to Sheahan an increase in his pay, and (4) it is not denied that James Sheahan told Taylor: "You are worth more money and you are going to get it." But this was for the jury under the instructions. On a conflict of evidence the verdict of the jury, under proper instructions, should be allowed to stand.

Part of the first instruction is quoted by the appellant in its brief, and it is said that this instruction, in connection with the ruling of the court touching the value of the services rendered, constitutes error. That part of the instruction quoted reads: "Should you find from the evidence that the plaintiff entered the defendant's employ, under a contract for $100 per month for the second year of service, and of $125 per month for the third year of service, and that said contract was still in force at the end of the plaintiff's work during the third year of service, and had not been changed by the attitude of the parties, then you will find for the plaintiff on said claim of service, and fix the amount of his recovery at the difference between what he actually did receive and what his contract called for during the time of the service, together with interest at the rate of 7 per cent. on his balance from the termination of the contract time to the day of the verdict; otherwise, you will find for the defendant, as to said last claim." Counsel do not point out the error in this instruction. It is also said that the jury disregarded this instruction, and as evidence of the fact their alleged written communication to the court, claimed to have been returned with the verdict, is quoted in affiant's brief:

"A party cannot predicate error in the giving of an instruction upon the ground that the same is not sufficiently explicit and particular, unless he has first called the attention to the court to such defect, and the court has refused to correct the same." *Henry v. Omaha Packing Co.,* 81 Neb. 237; *Olmsted v. Noll,* 82 Neb. 147. Our attention is not challenged by appellant's brief to any disregard of this rule by the trial court. Defendant is not shown to have presented to the trial court a proposed instruction in place of the instruction sought to be criticised. As to the method by which it is claimed in appellant's brief that the jury reached their conclusion, the affidavit of Mr. Rait is not made a part of the bill of exceptions, allowed by the court, and it is not referred to in the motion for a new trial. The record therefore does not disclose that the at-

tention of the trial court was called to the affidavit. Neither is the matter sought to be reviewed properly before us, because it is not in the bill of exceptions. For these reasons, it cannot be considered. To obtain a review in the supreme court, the parties seeking such review must have presented the questions of law to the lower court. *Gibson v. Arnold,* 5 Neb. 186; *Courtnay v. Price,* 12 Neb. 188; *Chicago, St. P., M. & O. R. Co. v. Lundstrom,* 16 Neb. 254; *Norton v. Nebraska Loan & Trust Co,* 40 Neb. 394; *Dunham v. Courtnay,* 24 Neb. 627; *Batty v. City of Hastings,* 69 Neb. 511.

It is next claimed that the court erred in overruling the defendant's motion for a directed verdict. It is undisputed that the plaintiff did the work. He was to be kept in the employ of the company if he made good. That he made good is perhaps settled by what the company itself did. It kept him. It also voluntarily gave him more after a time than it gave him when he began. If the company did not want him and he was unsatisfactory, it could have discharged him, instead of keeping him three years lacking ten days only. We think there was abundant evidence to submit to the jury. We are unable to discover error in the instructions. The verdict of the jury is conclusive.

It is not the province of this court to reverse a judgment of the district court, where the verdict is rendered upon conflicting evidence and under proper instructions. It follows that the judgment of the district court is

AFFIRMED.