*Mandamus awarded.*

THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY

*v.*

MICHAEL DIGNAN.

| | |
|---|---|
| 56 | 487 |
| 28a | 659 |
| 56 | 487 |
| 107a | 105 |

NEGLIGENCE *in a railroad — and herein of contributory negligence.* In an action against a railroad company to recover for personal injuries received by the plaintiff, from being run over by a train of cars on the defendants' road, it appeared the defendants and another company used the same grounds in the city of Chicago, the main tracks of the two roads being between six and seven feet apart. The plaintiff, being a track repairer, in the employ of the latter company, was engaged, with two other men, in replacing a rail on the track of this company, when a train of freight cars, which was being pushed backward, approached the workmen, unobserved by them until nearly upon them, when they heard the shouting of a brakeman on the rear car, and hastily jumped backward to the end of the ties on the track of defendants. While standing there waiting for the train to pass, the plaintiff and one of his fellow-laborers were struck by two freight cars belonging to defendants, and the plaintiff was severely injured. These cars were moving in the same direction as the train on the other road, by their own momentum, having been uncoupled from a train while in motion, and left quietly to run along the track without any person upon them to check their motion or to give an alarm : *Held,* the defendants were guilty of negligence in running their cars in the manner indicated, but the plaintiff was not chargeable with such negligence as would bar his recovery because of his omission, under the excitement and alarm of the occasion, to look along the track of defendants' road to see if there might not be a train approaching, although he had time to do so before the collision.

APPEAL from the Superior Court of Chicago; the Hon. WM. A. PORTER, Judge, presiding.

The opinion states the case.

Mr. GEORGE C. CAMPBELL, for the appellants.

Mr. TOM STUART DICKSON and Messrs. HERVEY, ANTHONY & GALT, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court :

This was an action brought by Michael Dignan against the Chicago, Rock Island and Pacific R. R. Co., to recover damages for injuries received by the plaintiff from being run over by a train of cars belonging to said company. It appears the defendants and the Michigan Southern Railway Co. use the same grounds in the city of Chicago, the main tracks of the respective companies being between six and seven feet apart. At and near the place where the injury occurred numerous side tracks are connected with the main tracks by switches. The plaintiff was a track repairer, in the employ of the Michigan Southern Company, and in October, 1869, was engaged, with two other men, in replacing a rail on the track of this company. While thus engaged, they were interrupted by a long train of freight cars passing over the track. The train was backing slowly and they did not discover it until nearly upon them, when their attention was arrested by the shouting of the brakeman on the rear car, and they hastily jumped backwards to the end of the ties on the track of the defendants. While standing there, waiting for the train to pass, the plaintiff and one of his fellow-laborers were struck by two freight cars belonging to the defendants. The plaintiff fell in such a manner that he was passed over by the cars and his arm was crushed, and he was otherwise severely injured. His companion, who was also struck, so fell that he was not seriously injured. The third laborer was not touched. These two cars were moving northwardly, in the same direction with

the train on the other track. They, with several other cars, had just before been taken from a side track to the main track, over a switch south of where these men were standing, and then had been backed up the main track. When the train had acquired sufficient momentum, the two rear cars were uncoupled and continued on their course from the motion already acquired, while the locomotive with the other cars moved off in the opposite direction. These two cars, thus left quietly to move along the track by their own momentum, without any person upon them to check their motion or to give an alarm, were the cars which struck the plaintiff.

It is not objected that the damages are excessive. Objection is taken to the modification by the court of defendants' instructions, but this modification was in accordance with the well settled principles so frequently announced by this court in regard to comparative negligence. There is no error in the record unless in the refusal of the court to set aside the verdict as not sustained by the evidence, and we have very carefully examined the testimony, which is a little obscure, but the application of which to the diagram contained in the record we think we understand, and have, with some hesitation, concluded that the judgment must be affirmed.

We have no doubt as to the negligence of the defendants. Every person who has had frequent occasion to visit the grounds of a railway company where freight trains are made up, must have observed how noiselessly one or two empty freight cars will move along the track after having been uncoupled from the locomotive or from the main body of the train, and what a distance they will pass over by their own momentum. That it is negligence to set a car or a couple of cars in motion, and, after giving them a momentum that will carry them onward at the rate of three or four miles an hour, to disconnect them from all controlling power, and allow them to move along where workmen are engaged, with their attention absorbed by their employment, and where persons are constantly passing to and fro, with no one on the cars to apply

a brake or sound an alarm,— that this, we say, is negligence, is a proposition which can not well be denied. The sense of hearing alone will give warning of the approach of an ordinary train, but one of these cars, thus set in motion, gives to the ear no token of its approach, and it is undoubtedly true that many a life has been destroyed, and many a limb crushed, by agencies substantially like those disclosed by this record. The plaintiff offered in evidence various rules of the company, one of which expressly forbids what are called "flying switches." The mode of switching adopted in the present case, it appears by the evidence, was not what is technically called a "flying switch," but it seems to us to possess substantially the same elements of danger. In this case, as in the flying switch, cars are left to pursue their own way along the rail, with no person to control or check their course or to give warning of their approach, and with a speed which, though slow, is the more noiseless for being slow, and is still sufficient to prostrate whatever person the cars may strike.

But the counsel for appellants, in his argument, relies chiefly on the alleged negligence of the plaintiff as a ground for reversal, and we certainly have not found the question free from difficulty. If the testimony of the plaintiff himself and that of the witness Mesner, who was struck by the car at the same time, stood alone, there would be no doubt. They both swear that when they stepped back from the track of the Michigan Southern Company, they cast a glance in each direction along the track of the defendants, and no train was on the track. They also swear that about fifteen cars had passed on the track of the Michigan Southern before they were struck. The theory of the case presented by their testimony would be that the train of the defendants, of which the two cars in question were a part, had not come from the side track on the main track when the plaintiff and the witness Mesner stepped back from their work. They had no reason, therefore, to anticipate sudden danger from that direction, and if their testimony is correct, when the two cars were uncoupled, the per-

sons in charge of the train, or at least the man who uncoupled the cars, might have seen they would almost certainly run down the men who were standing so near the track with their attention absorbed by the other train. Here, then, would be the most wanton recklessness on the part of defendants' employees, with no want of ordinary care on the part of the plaintiff.

But we are of opinion that the other testimony in the case, and other portions of their own testimony, refute the statement that the cars of the defendants were not on˘ the main track and moving northward at the time the plaintiff stepped back from his work.

Joseph Smith, a witness called by the defendants, swears that he was on the hind car of the train on the Michigan Southern road as it was backing north. He saw these men at work as the train slowly approached them, and they did not get out of the way. When within two car lengths of them he shouted to them to get off his track, which they immediately did by stepping to the other track. Just then he discovered the two cars moving in the same direction with his own train, on the defendants' road, the first car being only about a car length behind the end of the train where he was standing. Then he says, quoting his own language, " I hallooed to them again, and told them to look out for the cars. They did not have time to get off, for my train was only about a car length ahead."

This witness is disinterested, and was in a position to know the precise manner in which the accident occurred, and is corroborated by other witnesses. We have no doubt he states the case truly, and in this we agree with the counsel for appellants.

On this view of the facts can the plaintiff be charged with not having exercised ordinary diligence ? We readily concede that a person coolly approaching a railway, with intent to cross it, and knowing that trains are liable to pass at any moment, would be guilty of carelessness if he did not˙look in both

directions for an approaching train.    But the question of negligence can be measured by no fixed and unbending rule. Each case must be tested by its own peculiar facts.    An act which might justly be regarded as inexcusably careless if done coolly and deliberately, and with nothing to disturb the ordinary action of the brain, may, on the other hand, be pardoned as not unnatural if done under the excitement of sudden peril and alarm.    How is the act of the plaintiff to be regarded in this case, and would it be just to apply to him, under the circumstances, the rule applied by this court in the case of *C. & N. W. R. R. Co.* v. *Sweeney*, 52 Ill. 325, cited by plaintiff's counsel?

The three men were engaged in spiking the inside rail, and so intent upon their labor that they neither saw nor heard the train approaching on their own track.    When it was but two car lengths distant, they were suddenly alarmed by the shout of the brakeman and started back, as almost all men would have done under the circumstances, on the same side of the track upon which they were at work.    They did not step within the rails of the defendants' road, but in their natural anxiety to place themselves beyond all danger, two of them stepped back two or three feet further than was necessary, and thus brought themselves within reach of the projecting cars, as they passed on the defendants' line.    As they stepped back, their attention was of course engaged by the danger they were escaping, and the shouting of the brakeman, and they were probably not conscious how near the defendants' road they placed themselves.    The brakeman again shouted, but, as he testifies, before they had time to get out of the way the defendants' cars had struck them.    We do not suppose there was not sufficient time for the plaintiff to have turned his head in each direction, and have looked north and south along defendants' road, before the collision.    But, we are of opinion that he can not be charged with having shown less than the prudence of ordinary men merely because, in the hurry and excitement of his unpremeditated movement to escape from

danger on one line he forgot, for a few seconds, that he might be exposing himself to it on the other.

In examining this case it is worthy of observation that, here were three men each acting for himself, and none of them, we must suppose, desirous of exposing himself to the loss of life or limb, all doing precisely the same thing under the influence of a sudden alarm. The fact that they all acted alike, certainly tends to show that they did what it would have been natural for men in general to do under like circumstances. The fact that one of them did not step back quite so far as the other two, and thus escaped injury, was probably accidental, and we have little doubt that they were all for the moment entirely unconscious that either of them was liable to injury from cars on the defendants' road. It would, we think, be unreasonable and unjust to say that this plaintiff is to be charged with such negligence as will bar his recovery in this case, merely because he did not use all the means to guard against the danger of an approaching train which may properly be required of one who places himself upon a railway line under no circumstances of excitement, and with nothing to divert his attention from the fact that his position is one of peril.

These are the conclusions at which we have arrived after a full examination of the case. The defendants are chargeable with carelessness. The plaintiff, under the peculiar circumstances, can hardly be said to have acted otherwise than most men of ordinary prudence would have acted under similar circumstances. The case is certainly not free from doubt, but it is impossible to say that the verdict is clearly unsupported by the evidence.

The difference between this case and that of the *C. & N. W. R. R. Co.* v. *Sweeney*, cited by counsel for appellants, and above referred to, is very palpable, both as to the question of negligence on the part of the company, and that of the absence of negligence on the part of the plaintiff.

*Judgment affirmed.*