Sioux City & Pacific R. R. Co., PLAINTIFF IN ERROR, v. William G. Smith, DEFENDANT IN ERROR.

| 22 | 775 |
|----|-----|
| 27 | 682 |
| 22 | 775 |
| 38 | 117 |
| 22 | 775 |
| 50 | 558 |
| 51 | 782 |
| 22 | 775 |
| 62 | 185 |
| 62 | 188 |

1. **Railroads:** INJURY TO EMPLOYE. The foreman of a company of men engaged in the business of repairing bridges, water-tanks, and telegraph lines on a line of railway, who has power to control and direct the movements of his men, will render the company liable for acts of negligence committed by him in the course of his employment, whereby one of the men under his control, without his fault, is injured.

2. ———: ———: NEGLIGENCE OF FOREMAN. A company of men under the control of a foreman engaged in the business of repairing bridges, water-tanks, and telegraph lines along a line of railway, in going to and from their labor on a hand car on such railway, are under the control of such foreman, and his principal is liable for his negligence occurring in the course of his employment.

3. **Verdict,** *Held*, To be sustained by sufficient evidence.

4. **Instructions** set out in the opinion, *Held*, To have been properly given.

ERROR to the district court for Platte county, whither the cause had been removed on change of venue from Madison county. Tried below before POST, J.

*John B. Hawley*, for plaintiff in error, cited: Wharton Neg., Sec. 199. Patterson Railway Law, Sec. 316. 2 Thomp. Neg., 1,008. *Penn. R. R. Co. v. Wachter*, 15 Am. and Eng. R. R. Cases, 190. *Railway Co. v. Leech*, 41 Ohio State, 388. *Schultz v. R. R. Co.*, 67 Wis., 620. Beach Contributory Neg., 38. *Meyer v. M. P. R. R.*, 2 Neb., 337.

*Joy, Wright & Hudson* and *H. C. Brome*, on same side, cited: *Gumz v. Railroad Co.*, 52 Wis., 672. *McGrath v. R. R. Co.*, 18 Am. and Eng. R. R. Cases, 5. *Felch v. Allen*, 98 Mass., 572.

*Wigton & Whitham* and *W. M. Robertson*, for defendant in error, cited: Wood Master and Servant, Sec. 387. 2 Thomp. Neg., 975. *Stern v. R. R. Co.*, 34 N. W. R., 113. *Ryan v. C. & N. W. R. R.*, 60 Ill., 171. *Broderick v. R. R.*, 22 N. W. R., 802.

MAXWELL, CH. J.

This case was before this court in 1884, and is reported in 15 Neb., 583, the judgment of the court below being reversed. The action is brought to recover for the alleged negligence of one King, whereby the plaintiff below sustained damages. The cause of action is stated in the petition, as follows: "Said W. King, at said time, as such superintendent and foreman, had charge and control of said hand car, and while thus having charge and control of said hand car at said time, defendant and said King negligently ordered plaintiff and others to pump said hand car up to Blair behind a freight train then starting for Blair on said railroad, and negligently ordered and permitted plaintiff and others to hold to the way car on the rear of said freight train while passing over said railroad, and negligently failed to inform plaintiff of the danger, if any there was, of so propelling said hand car at that time and place, plaintiff being ignorant of any such danger, and negligently failed to order plaintiff to let go of said way car before arriving at the curve in said road, and before the train was running at a dangerous speed, and before the accident occurred, and negligently managed and controlled the running of said hand car while passing over said road from the Missouri River to the place of the injury herein complained of, and negligently applied the brake to said hand car while the same was in rapid motion, and negligently failed to inform plaintiff that the brake was about to be applied to the hand car before the application of the same, by reason of which negligent conduct plaintiff was

thrown from said hand car and greatly injured in his head and eyes, and has been ever since the said 18th day of August, 1880, and still is, sick and maimed, and has suffered and still does suffer greatly in mind and body, and ever since said day has been unable to perform any labor or earn any money except the sum of $4.00, and is incapacitated for labor in the future, and has been compelled to expend the sum of $185 for medical services and attendance. The plaintiff has sustained damages in the premises in the sum of twenty-five thousand dollars."

The railroad company, in its answer, "Admits that on said day and year W. King was in the employ of defendant, and that he was assisting in the construction and repair of bridges and water-tanks, but denies that he was superintendent of said work and foreman of said body of workmen at the time and as in said petition alleged."

There are certain other admissions which need not be noticed, and specific and general denials of the facts stated in the petition. On the trial of the cause the jury returned a verdict in favor of Smith for the sum of $10,000, upon which judgment was rendered.

In addition to the general verdict the jury were required to answer certain questions, which they did as follows:

"Had the plaintiff commenced to fall when King applied the brake to the hand car? No.

"Had the plaintiff's eyes been sore or inflamed before the accident complained of occurred? No.

"Do you find that the present diseased condition of plaintiff's eyes is the result or consequence of defendant's wrongful and negligent act? Yes.

"GEO. W. WESCOTT,

"*Foreman.*"

The errors assigned in this court by the railroad company may be grouped under three heads : First, that the evidence is not sufficient to sustain the verdict; second, that the injury to Smith was not the result of being

thown from the hand car; and third, error in giving and refusing instructions.

The testimony tends to show that Smith commenced to work for the railroad company under Mr. King as foreman in November, 1879, and that he continued in such employment under Mr. King until the time of the accident; that the business in which they were engaged was repairing bridges, landings, water-tanks, and the telegraph line; the company seem to have been known as the "tank, bridge, and telegraph gang." On the day the accident occurred the company in question was engaged in making a sixty-foot mast on the west side of the Missouri river at or near the Blair landing, for the purpose of running telegraph wires across the river; that the track at the point indicated ran nearly north and south for some considerable distance and then curved nearly due west, and run into the city of Blair; that there is an up grade all the way from where the parties were at work to said city; that on the day above stated, shortly after six o'clock P.M., King, the foreman, directed his company, including Smith, to place the hand car on which they were accustomed to travel on the track, and as there was a freight train a short distance ahead going up to Blair to run the hand car up to the train and be towed up by it, the train at that time running from one to two miles per hour; there was a strong wind blowing from the north-west at the time. The speed of the train gradually increased, and as it neared the curve turning west to the city of Blair it was running from six to seven or eight or nine miles per hour, the witnesses disagreeing as to the exact rate of speed. When the hand car was run up behind the train three of the company, including Smith, with the assent of King, if not by his direction, took hold of various parts of the rear part of the way car, so as to propel the hand car by means of the train. As the train approached the curve, King, fearing to go around the curve at the high rate of speed, called to the

members of his company holding on to the way car to let go; this order was heard by none of them; he called the second time and the second order was unheard; he then the third time ordered those men to let go of the way car; two of them heard the order and immediately let go. Smith claims that he did not hear the order and that he held on to the way car, and that King applied the brake to the hand car, thereby violently breaking his hold on the way car and causing him to lose his balance and to fall from the car, striking his face on a hard substance, whereby he sustained severe injuries which have since resulted in total blindness.

In *C., S. P., M. & O. R. R. Co. v. Lundstrom*, 16 Neb., 254, it was held that, "A conductor of a construction train on a railroad, with a gang of men engaged to work as day laborers for the railroad company, but under the immediate orders of such conductor, is, as to such men, the vice principal of the railroad company and not a fellow servant of such men. And an act of gross negligence on the part of such conductor, whereby the lives of such men are placed in jeopardy while working under his immediate orders and direction, and one of them is killed, is the negligence of the company, for which it is liable."

In *B. & M. R. R. Co. v. Crockett*, 19 Neb., 138, the following points were decided: 1st. "The under boss of a gravel train gang was directed by his immediate superior to take men and dig out a car which had been partly covered and derailed by a fall of gravel from a high bank near by, and in pursuance of such order proceeded to dig out the car, and while so employed was killed by the embankment caving in. Prior to that time the custom had been to station a watchman to give notice to the workmen of danger from the falling bank, which was omitted on that occasion. *Held*, That the company was liable."

2d. "The conductor of a gravel train on a railroad, with a gang of men under his immediate control, in the

employ of the railroad company, is, as to such men, the vice principal of the railroad company and not a fellow servant."

3d.    "A sub-boss under the immediate control and direction of the conductor or the person in charge of a gravel train is not, as to such conductor or person in charge of the train, a fellow servant."

The testimony clearly shows that King was the vice-principal of the railroad company within the cases cited. Smith was subject to his orders and bound to obey, and he had a right to presume that King would not permit the hand car to be run at such a rate of speed, either by attaching it to the train or otherwise, as to endanger the lives or limbs of the persons placed thereon. Mr. King must have known when he ordered some of the members of his company, including Smith, to run the hand car up to and attach themselves to the way car that the train was liable to increase its speed and to go around the curve in question at so rapid a rate as to render it dangerous. He must have known, too, that with the wind blowing strongly from the north-west, being directly against them, and the rattle of the cars, the almost impossibility of making his orders to Smith and the others to loose their hold on the way car heard. But he seems to have taken no extra precautions to notify those parties of his order. The fact that it was twice unheard by all certainly should have induced him to adopt some other means of notifying the parties in addition to simply speaking to them. Immediately on ordering the members of his company to loose their hold on the way car for the third time, King seems to have applied the brakes to the hand car, and thereby checked its speed, causing Smith to lose his balance and to sustain severe injuries. That this accident was caused by the negligence of King in his directions and control of the hand car, we think is clearly established, and the verdict in that regard fully sustained.

The testimony shows that Smith was blind at the time of the trial. He and a number of witnesses swear that this blindness resulted from the injuries above set forth. There is testimony tending to show that the inflammation of his eyes arose from other causes, but in our view the preponderance of the testimony sustains the verdict in that regard. Some objection is made to the amount of the verdict, but if blindness has resulted from the injury set forth the amount is not excessive.

Objection is made to the 10th paragraph of the instructions, which is as follows: "If you find for the plaintiff upon both the issues stated above, namely, that the said King was guilty of negligence which contributed to the injury complained of, you will then determine from the testimony whether or not plaintiff was, at the time he received the injury, in the discharge of his duty and in the line of his employment; and upon this question, also, the plaintiff is required to produce the burden or preponderance of proof. If you find that the witness, Mr. King, was employed as superintendent of construction or repair of defendant's bridges and similar work on its line of road, and as such superintendent he had control of, and authority over, a gang or company of men, including plaintiff, with authority to employ and discharge men in the name of the defendant, then the acts of the said King toward said men while acting within the line of his duties would be the acts of the defendant company, for which it would be responsible. And in such case, should you find that the plaintiff and others on the hand car took hold of the caboose on the freight train by order of or under the directions of said King, for the purpose of towing said hand car from the river to Blair, then in obeying said order and in carrying out the instructions of said King, the plaintiff should be said to be in the discharge of his duty and acting in the line of his employment, and if said King negligently applied the brake to said hand car while plaintiff was still

holding onto the freight train, and plaintiff received the injury complained of as the natural and direct result of said negligence, without fault or negligence on his part as already explained, the defendant would be liable, and you should so find."

The testimony tends to show that, in going to and from Blair on the hand car, Smith and his associates were under the control of King; there is no error, therefore, in giving the instruction. *Manville v. Cleveland & Toledo R. R. Co.*, 11 O. S., 417. *Broderick v. Detroit Union Railroad Station and Depot Co.*, 22 N. W. R., 802. *Pittsburg, C. & St. L. Ry. Co. v. Kirke*, 1 N. E. R., 849.

Objection is also made to the 12th paragraph of the instructions, which is as follows: "If you find the plaintiff is entitled to recover, your next and last duty would be to determine the amount of damage which should be assessed in his favor. If you find in his favor you should allow such damages as will reasonably and fairly compensate him for the injuries he has suffered as the natural and proximate consequence or result of the defendant's wrongful and negligent act. And here an important question is presented for you to settle from the testimony, namely: Is the present diseased condition of plaintiff's eyes the result of the injury received while in the defendant's employ for which this suit is brought? Upon this question, also, the burden of proof rests upon the plaintiff, and if you are not satisfied by a preponderance of the testimony that such disease of the plaintiff's eyes is the result of defendant's negligence, then in assessing damages in his favor you should not take such disease into consideration."

It is claimed on behalf of the railroad company that the court assumes in the above instruction that the defendant was negligent. A careful reading of the instruction, however, will show that this position is not sustained.

Objection is also made to instruction number one, given by the court at the request of the plaintiff below, which is

as follows : " If you find from the evidence before you that plaintiff, while riding on the hand car, just before or at the time of the injury, was in a dangerous position, and that King knew plaintiff was in such a position, and that King after being aware of that fact might, by the use of a proper degree of care, have prevented the injury, the defendant cannot rely on the negligence of plaintiff, if any there was in being in such a position, to defeat a recovery in this case. The degree of care required by King under such circumstances is in proportion to the peril threatened, and is such care as an ordinarily prudent man, under the same circumstances would exercise to prevent the injury."

This instruction, in our view, conforms to the testimony, and there is no error in giving the same.

Objection is also made to instruction number two, given at the request of plaintiff below, which is as follows : " If you find from the evidence and the instructions given you that the plaintiff is entitled to recover, it will be your duty to fix and ascertain from the evidence the amount to which he is entitled. You should carefully examine all the evidence as to the nature, character, and extent of the injury, and the result ; whether the disability, if any resulted from the injury, is permanent or temporary ; its extent, whether total or partial. If any permanent disability resulting, you should consider plaintiff's age, his reasonable expectancy of life, how much money he could earn as he was before the injury, how much, if any, he could earn with his reduced capacity, if any there was on account of the injury, and allow him reasonable compensation for any loss of time and capacity resulting from the injury. You should also allow him for his suffering. The law lays down no rule for estimating his damages on this account, but leaves it to your sound judgment. And you should allow such amount as in your best judgment would be just under the circumstances, not exceeding in all the sum claimed— $25,000."

This, we think, is a correct statment of the law, and there is no error in giving the same.

A number of instructions were given on behalf of the railroad company, and two were refused, apparently upon the ground that certain facts were assumed, and it is evident that the court did not err in refusing to give the same. The instructions taken as a whole state the law at least as favorably to the railroad company as the testimony would justify, and upon the whole case the judgment is right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.