CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. NIELS ANDERSON.

FILED OCTOBER 18, 1893. No. 4803.

1. **Review:** JOURNAL ENTRIES: REMEDY FOR DEFECT: TRANSCRIPTS. The entries upon the journal of the district court are conclusive evidence of its proceedings. If the clerk has not made such entries in conformity with the facts or the rulings of the judge, the remedy is by a correction of the journal by order of the district court. This court will not substitute a paper certified to be a memorandum of journal entry prepared by the judge for the journal entry itself, as it appears in the transcript filed in this court and certified to be a true transcript of the record.

2. **Trial:** INSTRUCTIONS: REVIEW. An instruction is erroneous which assumes a fact as established which is material to the case and as to the existence of which the evidence is conflicting.

3. ———: ———: ———. The giving of instructions which are vague and conflicting, and which probably had the effect of confusing and misleading the jury, is erroneous, and the fact that the general tenor of the instructions is more favorable to the unsuccessful party than to the successful one does not cure the error.

ERROR from the district court of Custer county. Tried below before GASLIN, J.

The opinion contains a statement of the facts.

*Marquett & Deweese,* for plaintiff in error:

Where several persons are employed in the same general service, and one is injured by the carelessness of another, the employer is not responsible, though the negligent servant is a superior in grade of employment to the one injured (Deering, Negligence, sec. 204), and this rule includes foreman, superintendent, and boss. (*McLean v. Blue Point Gravel Mining Co.,* 51 Cal., 255; *Chicago & T. R. Co. v. Simmons,* 11 Ill. App., 147; *Floyd v. Sugden,* 134 Mass., 563; *Malone v. Hathaway,* 64 N. Y., 5; *Keystone Bridge Co. v. Newberry,* 96 Pa. St., 246; *Hoth v. Peters,* 55 Wis., 405; *Ell v. Northern P. R. Co.,* 48 N. W. Rep. [N. Dak.], 222.)

An instruction assuming as a material fact that which is not established by the evidence is erroneous. (*Union P. R. Co. v. Ogilvy,* 18 Neb., 643; *Housel v. Thrall,* 18 Neb., 487; *Smith v. Evans,* 13 Neb., 316; *Woodruff v. White,* 25 Neb., 749; *Herron v. Cole,* 25 Neb., 704.)

Conflicting and misleading instructions are erroneous, and the error committed in giving such instructions is not cured by giving others which state the law correctly. (*Vanslyck v. Mills,* 34 Ia., 375; *Davis v. Strohm,* 17 Ia., 421; *Toledo, W. & W. R. Co. v. Morgan,* 72 Ill., 155; *Steinmeyer v. People,* 95 Ill., 383; *Fitzgerald v. Meyer,* 25 Neb., 82; *Wasson v. Palmer,* 13 Neb., 376; *McPherson v. Wiswell,* 19 Neb., 12, 126.)

12

*J. S. Kirkpatrick,* also for plaintiff in error.

*R. A. Moore* and *Henry M. Kidder, contra:*

The company is liable for the acts of the section boss. (*Sioux City & P. R. Co. v. Smith,* 22 Neb., 775; *Chicago, St. P., M. & O. R. Co. v. Lundstrom,* 16 Neb., 254.)

IRVINE, C.

The defendant in error was a section man in the employ of the plaintiff in error, and on the evening of November 21, 1890, was engaged, together with one Bingham, the "section boss," and one Dunlap, a road master, in loading three railroad rails upon a flat car at the station of Mason, in Custer county. While loading the rails, one of them, while being lifted upon the car, fell back in some manner and struck the hand of defendant in error, injuring it quite severely. This action was begun by defendant in error to recover damages for the injuries so sustained, and resulted in a verdict and judgment in his favor for $1,490.

The facts are, for the most part, undisputed. Bingham was the "section boss," with authority to employ and discharge section men, and the plaintiff below had, in fact, been employed by him and was under his direction and subject to his orders. Dunlap was the road master, but his authority and powers do not appear from the evidence. During the day three rails had been placed upon the platform in front of the station for the purpose of loading them upon a freight train due in the course of the afternoon. The train was late, and did not arrive until after dark. Anderson, by Bingham's orders, had remained at the station after the usual working hours had passed, for the purpose of assisting in loading the rails. The car upon which the rails were to be loaded was next to the caboose at the west end of the train. It stopped opposite to the platform upon which, at some point not clearly shown, but

near the car, was placed a brakeman's lantern. There is evidence tending to show that there was a light in the window of the station at some distance from the car. A stake was placed in a socket near the east end of the flat car. Anderson, Bingham, and Dunlap proceeded to load the rails by first raising the east end of each upon the car, and then shoving the rail so that the end would be guarded by the stake. They would then go to the west end of the rail, lift up that end, and upon a given signal, throw that end of the rail upon the car. Dunlap directed that the rails should be loaded. Bingham had supervision of the process of loading. It seems that two rails had been loaded in this manner, the east end of the third rail placed upon the car and shoved past the stake, and the three men proceeded to raise the west end. In doing so Anderson stood farthest east, and both Bingham and Dunlap were nearer the west end and the caboose. The rail was raised, the signal given, and the rail thrown toward the car. In some manner it rebounded, striking Anderson's hand. Plaintiff's theory was that the rail had not been pushed far enough so as to permit the west end to pass upon the flat car without striking the caboose; that it was Bingham's duty to see that it was in a safe position to throw; that he was so situated that he could see whether or not the rail, when thrown, would pass free of the caboose; that he failed to do so and that the rail when thrown did strike the caboose, and the accident was thereby caused. The plaintiff swears that the west end of the rail did strike the caboose, but in cross-examination it is shown that his only reason for saying so is that it is only upon that theory he can account for the accident, and that the statement was not based upon actual observation. There is testimony on the part of the railroad company in regard to the length of the car, the position of the stake and the rail, and the length of the rail itself, which, if believed by the jury, would render it impossible for them to find that the rail did strike the caboose.

In this state of the evidence the court gave the following instruction:

"If you find from the evidence that, when the plaintiff was loading the iron complained of in the petition, he was acting under the instructions of the section boss or road master, and was directed by him the way in which said iron should be loaded, and after one end had been placed upon the car told him to stop and go to the other end, and if at that time they were *nearer the end of the rail that struck the caboose* or freight train than he was, and had a better opportunity of seeing whether the rail would pass the other car, and instructed him to go from one end to the other and throw it on the car, and if such injury was sustained while following out such instructions of the road master or section boss, the defendant would be liable for the same. Modified as follows: Provided you find the said plaintiff was under the control and absolutely subject to orders of the section boss or road master who was employed by defendant to control the plaintiff while engaged in the work said plaintiff was doing at time he was injured, and you find by acting under said orders said plaintiff was injured by the carelessness and negligence of defendant and its representatives while in charge of the authority placed in him by defendant. You will find for plaintiff if he was in the use of ordinary care when he was injured."

The object of this instruction seems to have been to give the whole law to the jury upon this theory of the case. It will be observed that in it the court assumes as an established fact that the rail did strike the caboose, the language being: "If at the time they were nearer the end of the rail that struck the caboose or freight train than he was, and had a better opportunity of seeing whether the rail would pass the car." The word "if" had the effect of submitting to the jury the question of the position of the men and their powers of observation, but did not qualify the clause in regard to the rail striking the caboose, leaving that question

of fact, upon which the evidence was conflicting, as assumed by the court and nowhere by the instructions left to the determination of the jury.   The instruction was erroneous in this particular.   It was objectionable also as being vague in its expression, and ambiguous.   The last sentence, "You will find for the plaintiff if he was in the use of ordinary care when he was injured," standing as it does alone, might lead the jury to infer, in connection with the assumption in regard to the fact of the rail striking the caboose, that the question of plaintiff's contributory negligence was the only one left for their consideration.

It is said by the defendant in error that the general effect and tenor of the instructions were very favorable to the plaintiff in error.   This is true, but an erroneous instruction is not cured by giving another stating the law correctly, nor by stating it too strongly for the other party.   A review of the instructions discloses a very peculiar state of affairs.   Under the rule as laid down in *Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb., 254, and *Sioux City & P. R. Co. v. Smith*, 22 Neb., 775, Bingham certainly occupied towards Anderson the relation of a vice-principal. By the first instruction given at the request of the plaintiff that question was left to the jury under the instruction that to hold the defendant responsible the jury must find that the section boss had control of and charge over the men, and authority to employ and discharge men.   By the modification of the second instruction the jury was told that the plaintiff must be under the control of, and absolutely subject to the orders of, the section boss or road master.

By the first instruction given by the court of its own motion the jury was told that to sustain the action it must find that plaintiff was acting under proper and legitimate orders of the section boss and road master who were the regularly constituted representative agents of the defendant company, provided they had power to control and direct plaintiff's movements; and later on, in the same in-

struction, that the plaintiff must be absolutely under the direction and control of the boss. Then, at the request of the defendant, the jury was told point blank that the evidence showed Bingham and Dunlap to be fellow-servants; and again, that a section foreman is a fellow-servant where he works with the laborers, and his business was not entirely that of direction and supervision.

It was also urged that the railroad company was negligent in not providing sufficient lights and in not having on hand a sufficient force of men to safely load the rails. By the second and third instructions given by request of the railroad company the jury was told that there could be no recovery upon that ground, because there was no evidence that Anderson made any objection to proceeding with the work under the circumstances; yet by other instructions the jury is told again and again that if the plaintiff was injured while carrying out the orders of his superiors it should find for the plaintiff, provided the injury was cause l by negligence of the defendant or defendant's representatives. The rule in regard to negligence was nowhere defined, except by the fifth and sixth instructions given by the court of its own motion. By these instructions the jury was told that it must find for the defendant, if it found that the defendant was in the exercise of ordinary care at the time. Nowhere, except in the absolute instructions, given at the request of the defendant, was the jury limited as to the acts which it might consider as negligent.

Again, the jury was told in the fourth instruction that if it found the injury the result of an accident plaintiff could not recover. The term "accident" was not defined.

We quite agree with the defendant in error, that instructions were given greatly to his prejudice. The trouble is that the verdict was absolutely contrary to such instructions, and taking the whole of the charge, the instructions were so conflicting, so vague, and so confusing that they

must have embarrassed rather than aided the jury. It would be a travesty upon justice to permit a verdict in favor of either party to stand when based upon such crude and conflicting statements and misstatements of the law.

REVERSED AND REMANDED.