FRED TOBEY v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

**Negligence per se: RAILROADS.** Kicking cars within a city, at illegal speed, with no one at hand to check them or give warning to men working on parallel tracks, is negligence *per se.*

**Contributory Negligence: JURY QUESTION.** A track repairer stepped from a track where he was working, to let an engine pass. His attention was momentarily diverted; in a few seconds he was injured by kicked cars coming on a parallel track. He was inexperienced and had looked in that direction a moment before. *Held,* whether he contributed to the injury was a jury question. *Haden v. Railway,* 48 N. W. Rep., 733; *Schaible v. Railway,* 56 N. W. Rep., 565; *Keefe v. Railway,* 92 Iowa, 182; *Buelow v. Railway,* 92 Iowa, 240; *Rutherford v. Railway,* 59 N. W. Rep., 302, and *Wilbur v. Railway,* 57 N. W. Rep., 356, *distinguished.* See *Kentucky Co. v. Smith,* 18 L. R. A. 63, and note, and *Pomporiso v. New York Ry.* (Conn.) 32 L. R. A. 530.

ROTHROCK and GRANGER, JJ., dissenting.

**Practice.** Defendant cannot complain that an issue was not stated by the court, where it is fully submitted in an instruction given on request of defendant.

*Appeal from Linn District Court.*—HON. J. H. PRESTON, Judge.

FRIDAY, APRIL 5, 1895.

Action to recover for personal injuries. Verdict and judgment for plaintiff. Defendant appeals.— *Affirmed.*

*S. K. Tracy* and *J. C. Leonard* for appellant.

*Rickel & Crocker* for appellee.

Kinne, J.—The petition in this action is in two counts. The cause of action, as stated in the first count, is in substance as follows: That on June 7, 1892, the plaintiff was in defendant's employ as a track repairer or section man, and was engaged, under the direction of defendant, in the line of his duty upon and near the tracks of the defendant, at and near C avenue crossing in the city of Cedar Rapids, and in defendant's switch yards, and was necessarily, and in the performance of his duty, upon and near the railway and switch at and about said place. It is charged that while the plaintiff was thus engaged, and in the exercise of due care on his part, and in getting and remaining out of the way of danger of one of its switch engines approaching on the track where he was working, the plaintiff was struck, knocked down, and run over, and his left arm crushed so as to render amputation necessary, and that he was otherwise cut and bruised by some cars operated and run by defendant in a grossly careless and negligent manner. The acts of negligence alleged are as follows:

*First.* In kicking said cars along its tracks, detached from the engine, at a speed of eight or ten

miles an hour, which speed was unlawful, and in viola-
tion of the ordinance of the city. *Second.* That the
employes of the defendant in charge of said cars were
incompetent, were not keeping a proper lookout for
persons upon or in close proximity to the track on
which the cars were run; that they negligently and
carelessly failed to see plaintiff in time to give any sig-
nal or alarm, and failed to give the usual and
necessary signals of approaching danger, so as to warn
plaintiff of the approach of said cars. *Third.* That
said employes negligently failed to discover plaintiff
in time to avert striking and injuring him, and so failed
to avert striking him. *Fourth.* That defendant, whose
duty it was to properly guard plaintiff from and warn
him of all danger, and of approaching trains and cars,
negligently failed so to do. *Fifth.* That defendant
and its employes negligently and carelessly threw
plaintiff off his guard from the danger he encountered.
*Sixth.* That defendant carelessly operated cars and
engines on separate tracks, and negligently constructed
and maintained tracks too close together for safety to
persons engaged in working upon either of said tracks,
and in so operating them as to cause a person attempt-
ing to get and remain out of the way of cars on one
track to get in danger of those operated on other tracks.
In the second count it was alleged that the place where
plaintiff was placed at work was one of more than ordi-
nary danger and hazard to persons working on or about
the tracks, from the operation of the railways, owing
to the unusual nearness, together with the dangerous
proximity of the tracks to each other, and to the amount
and character of the switching done at that point, and
owing to the hazardous practice of defendant in switch-
ing cars there, requiring extraordinary vigilance and
care on part of workmen engaged upon the tracks in
keeping a lookout to protect themselves from passing

cars and engines; that the dangers and hazards were such as to require special instructions and caution from defendant to one unused to working in such places, to enable him to avoid being injured by cars operated upon said tracks; that plaintiff was unused to working at such places, and had never before worked there, and was unaware of such hazards and dangers, all of which was known to defendant; that defendant failed to give plaintiff any instructions as to such danger.   The count then sets out with great particularity the claimed extraordinary dangers, and avers that said accident resulted to plaintiff because of the negligence of the defendant, and its failure to warn plaintiff while he was in the proper discharge of his duties and without fault on his part.   The defendant denied all the allegations of the petition, averred that plaintiff was guilty of contributory negligence in not looking out for and avoiding passing cars, and says that plaintiff knew all of the dangers incident to his work, and made no objection to the manner in which defendant did its work in said yard.

II.   Complaint is made that the court, in its statement of the issues to the jury, omitted to advise them as to that part of defendant's answer wherein it pleaded plaintiff's knowledge of the manner in which the work was done in the yard, and the fact that he made no objection thereto.   It is true that in the statement of the issues no mention was made of this defense.   In the seventh instruction, however, the jury was told that if "plaintiff, before the accident, knew that the cars were frequently switched in this yard at the rapid speed testified to, and if he made no objection to such manner of switching, then he is presumed to have assented thereto, and assumed the risk of injury from such rapid movement of the cars, and he cannot recover if his injuries were occasioned by such

switching or movement of the cars; and if such you find
the fact to be, then your verdict should be for the
defendant." There is, then, no just ground for com-
plaint in this respect. *Siltz v. Insurance Co.*, 71 Iowa,
710. That this instruction fairly presented the issue
ought not now to be a subject of contention, inasmuch
as it appears that the instruction was given at
defendant's instance.

III. To the end that what may be said hereafter
may be properly understood, it is necessary that we
state the facts and circumstances surrounding
this accident. It appears that just prior to
being struck, plaintiff and one Scheeler were
working on the track of defendant at a point where it
is crossed by C avenue. They were putting in plank
in the track. They had been working there about
twenty or twenty-five minutes. The last thing plaintiff
did was to drive a spike in a plank. While so doing,
he heard an engine bell ringing. He looked up, and
saw the engine coming, eighty or ninety feet away. It
was coming from the north, and on the track upon
which he was at work. When he had finished driving
the spike the engine was within ten or fifteen feet of
him. Plaintiff thus describes what followed: "I
stepped off the track, to allow this engine to pass, and
as I stepped off I saw a foot adz on the other side of the
track. That was a tool for a man to work with, trim-
ming off timbers. I saw a man there attempting to
get it off the track before the engine ran over it. He
attracted my attention for four or five seconds, and I
heard some one halloo, and I turned around, and about
the same instant that I turned I was struck by cars
coming from the south. I imagined I saw the car,
which seemed to be about a foot from me. When
I saw it I tried to move, but I could not. When I was
struck by these cars, I was standing from eighteen

inches to two feet from this track, which is the main line track, and is the first track west of where I had been working on. I was struck by cars coming from the south, on the main line track. I was standing there, and the engine going south on the track I had been working on had not got by me yet. I was standing between the tracks, I would judge about eighteen inches to two feet from the main line track. The distance between these tracks is seven feet and ten inches. The cars that struck me were coming from the south. I had been facing the east. That would be looking towards the track I had been working on. While working on this track, I had been facing north. When I stepped off of the track I had been working on, I was looking east. Before attempting to drive this spike, I looked down south along the track. I had a view of them all, and I could see the adjacent tracks. While working there, I was facing in the opposite direction from which these cars come. I had looked down these tracks a minute or a minute and a half before the accident. During that time I drove the spike, and got off the track, to let the engine pass that was coming from the north. I did not think there were more than five seconds passed from the time I got off of the track where I had been working before I was struck. As I looked at this foot adz on the track, I was in the act of looking south, but this man attracted my attention, who was attempting to take the foot adz off the rail, for five or six seconds. My attention was next attracted by some one crying out. I was startled by it. Just before I was struck by these cars coming from the south, I was looking toward the east. At the time some one cried out I looked toward the right, and as I did so the cars seemed to be about a foot from me. I was struck, and they throwed me right square around with my face to the

north, knocking me down, and running over my left arm. The wheels ran over it in three or four places. The muscles of my arm were on the rail, and my hand was on the rail and the wheels went over the muscle, starting a little above the elbow and coming down over the forearm and over the hand, which of course crushed my arm. There was no engine attached to the cars that struck me. I would judge they were going at the speed of eight or nine miles an hour at the time they struck me." The testimony also showed that the foreman was some two car lengths away when the accident happened, that he gave plaintiff no notice of approaching trains, and that plaintiff had never worked in a yard where the practice of kicking cars was followed, and that he had no knowledge of the practice in the Cedar Rapids yards. The fireman on the engine which came from the north testified that the cars which struck plaintiff were coming on the main line, and were not attached to any engine, that they were being kicked, and were approaching from the south; that he hallooed to plaintiff when the cars were forty or fifty feet from him, but plaintiff did not then have time to get away; that three or four seconds elapsed between the time plaintiff stepped off and the time he was struck by the cars; that one Bradshaw hallooed to plaintiff at about the same time that he did. Evidence was introduced showing that it was the duty of the section foreman to take care of his men, to call them off the track when trains were approaching, and to direct them on which side of the track to go. On the Saturday prior to this accident, the section foreman, at a time when plaintiff was on the track, told him to keep on with his work, and he would tell him when a train was coming. Scheeler, who was working with plaintiff immediately prior to the accident, says he did not see or hear the

approach of the cars which struck plaintiff. Augustine, a brakeman, says these cars were kicked, and he was on top of the middle car; that there were three of them. He remained on top of this car until plaintiff was struck. He saw plaintiff as the cars were going down the track, and at a point about one hundred to one hundred and fifty feet from him. He says he had "the slack drawn upon the middle brake. It was set a little, but not set as tight as I could get it." He continued to see plaintiff until the cars were within fifty, or seventy-five feet of C avenue crossing. It appears that it was the usual practice to kick cars in these yards. Also, that if plaintiff had looked south at the right time, he could have seen at least three hundred feet, and probably further, down the track. The defendant introduced no evidence.

IV.   The court gave the jury the following instruction:   "(5) If you find from the evidence that plaintiff was in the employ of defendant at the time of the injury complained of, and was employed in repairing defendant's track at the point where the accident occurred; that while so employed his attention was necessarily engaged by reason of the nature of the duties he was then engaged in; that while so engaged in performing such duties a train was approaching him on said track, and that it was near to him when discovered for the first time by him; that in the emergency and hurry to get out of the way of such train so approaching plaintiff stepped back from said track, and near to the track lying next thereto, and running parallel therewith across the street crossing at C avenue; that while so standing cars had been cut loose from an engine on defendant's track, and were being kicked back with such force that they were running on said parallel track at a rate of speed exceeding six miles per hour; that no one was stationed on or near the end of said cars

nearest to and approaching plaintiff, in order to check speed and warn persons on said track of their approach; that plaintiff did not, in the exercise of ordinary care and diligence, discover the approach of said cars in time to avoid injury to himself; that plaintiff was not guilty of any negligence which directly contributed to his injury,—then plaintiff will be entitled to recover, and you should find for plaintiff. If you fail to so find, then plaintiff will not be entitled to recover, and you should find for defendant." It is insisted that in giving this instruction the court invaded the province of the jury, and determined as a matter of law that the facts therein recited, if established by the evidence, constituted negligence, which authorized a recovery, unless the jury should find that plaintiff had failed to establish his own freedom from negligence contributing to the injury. The effect of the instruction was to direct the jury that the kicking of cars with such force as to propel them at a rate of speed exceeding six miles an hour, when no one was stationed on or near the end to warn persons of their approach, or to check their speed, was negligence as to an employe working upon the defendant's track, under the circumstances disclosed in the instruction, if they found them to exist; and, if they did so find, and also found that plaintiff was not guilty of negligence contributing to the result, he should recover. Generally, the question of negligence is for the jury, but this is not always so. The rule is, if, from the undisputed facts, but one conclusion can reasonably be drawn, then the question is one of law; but if, under the facts, different minds might reasonably reach a different conclusion, it is a question of fact for the jury. *Milne v. Walker*, 59 Iowa, 186; *Whitsett v. Railway Co.*, 67 Iowa, 150; *Mathews v. City of Cedar Rapids*, 80 Iowa, 463; *Schmidt v. Railway Co.*, 75 Iowa, 609. It must be remembered

that in this case no evidence was offered by the defendant; that there is no dispute as to the facts of the case, nor, as it seems to us, any room for controversy as to the conclusions which must be drawn from them. We think the instruction was correct. Nor does it in any way conflict with the general rule above laid down. It appears without conflict that these detached cars were moving some eight or nine miles an hour; that they were approaching plaintiff with no one on the end of the car nearest him to warn him or to check their speed. The ordinance of the city of Cedar Rapids, it is conceded, limited the speed of locomotives and cars within the city limits to six miles an hour, and it is also conceded that the place of the accident was within the limits of said city. This court has held that a violation of such an ordinance, by running engines and cars at a prohibited rate of speed, is of itself negligence. *Correll v. Railway Co.*, 38 Iowa, 120. This holding has the support of the great weight of authority. *Keim v. Transit Co.*, 90 Mo. 314, 2 S. W. Rep. 427; *Karle v. Railroad*, 55 Mo. 476; *Maher v. Railroad*, 64 Mo. 267; *Railroad Co. v. Dunn*, 78 Ill. 197; *Schlereth v. Railway Co.*, 96 Mo. 509, 10 S. W. Rep. 66; *Railroad Co. v. Mathias*, 50 Ind. 65; *Pennsylvania Co. v. Horton* (Ind. Sup.) 31 N. E. Rep. 45; *Pennsylvania Co. v. Stegemeier*, 118 Ind. 305, 20 N. E. Rep. 843. So, also, it is a general rule that the doing of a prohibited act, or the failure to perform a duty enjoined by statute or ordinance, constitutes negligence for which the party guilty of such act or omission is liable, unless excused by the contributory negligence of the one to whose person or property an injury is done. *Dodge v. Railroad Co.*, 34 Iowa, 276; *Reynolds v. Hindman*, 32 Iowa, 146; *Sala v. Railway Co.*, 85 Iowa, 678; *Reed v. Railway Co.*, 74 Iowa, 188; *Lonergan v. Railway Co.*, 87 Iowa, 755; *Railroad Co. v. Voelker* (Ill.) 22 N. E. Rep. 20; *Dahlstrom v. Railway Co.* (Mo. Sup.) 18 S. W.

Rep. 919. It must follow, then, that the defendant, in running its cars within the city limits at a greater rate of speed than was allowed by the ordinance, was guilty of negligence, and it is conceded that the cars so run struck plaintiff, and inflicted the injury complained of. The defendant then is liable if it is made to appear to the satisfaction of the jury that plaintiff did not by his negligence contribute to produce the injury. We think also that the kicking of the cars, under the circumstances disclosed in this case, and as to which there is no dispute, was negligence *per se.* In *Reifsnyder v. Railway Co.*, 90 Iowa, 76, where the injury was to a team of horses, we said: "We are not prepared to hold that a railway company may switch cars, even at the rate of four miles an hour, in its private yards, when its employes know, or have reason to expect, that drivers of teams may be lawfully between the tracks, without having an employe ride such cars. Whether they owed a duty to plaintiff to have a man on top of this car which had been kicked back would depend upon circumstances surrounding the accident." In that case the party whose team was injured was not an employe of the company, nor were the facts all undisputed as in the case at bar. In the case at bar, plaintiff, as appears from the undisputed evidence, was at work laying plank in the track, in the yards of the company, where there were numerous tracks. He was driving a spike just as the engine approached from the north. It was a labor which demanded his undivided attention, and which apparently should be completed so that the engine could pass safely over the plank. He stepped off the track when the engine was a few feet from him, and in so doing stepped over too far, and too near the main track, when he was struck by these kicked cars. No one was on the end of the car nearest to him; the man on the center car gave no warning; no

bell was rung; but these cars coming from an opposite
direction, at a speed of eight or nine miles an hour, and
without any warning given in time, ran him down.   He
had looked south just before he began to drive the
spike.   In the case of *Railway Co. v. Dignan*, 56 Ill.
487, which in its facts is much like this, the court said:
"That it is negligence to set a car or a couple of cars
in motion, and, after giving them a momentum that will
carry them onward at the rate of three or four miles an
hour, to disconnect them from all controlling power,
and allow them to move along where · workmen are
engaged, with their attention absorbed by their employ-
ment, and where persons are constantly passing to and
fro, with no one on the cars to apply a brake or sound
an alarm,—that this, we say, is negligence, is a proposi-
tion that cannot well be denied." In *Railroad Co. v. Con-
verse*, 11 Sup. Ct. Rep. 569, a case where a train of cars
was severed in the night time, leaving the rear portion
uncontrolled except by brakes, to make a running
switch across a public highway at grade, without any
warning that they were approaching, it was held to be
such an obvious disregard of the rights of a traveler
on the highway attempting to cross after the passage
of the first section of the train that the court was war-
ranted, as a matter of law, not simply in instructing
the jury that such facts were evidence of negligence,
but that they constituted negligence.   Mr. Justice
Harlan, in the opinion, said:   "If the evidence was so
conclusive against the defendant upon the question of
its negligence that the jury could not reasonably find
to the contrary, it was competent for the court, within
the doctrine of the cases above cited, to so instruct
thereon, leaving the jury to determine the question of
the plaintiff's negligence, in respect to which the evi-
dence was conflicting."   In *Buelow v. Railway Co.*, 92
Iowa, 240, while not deciding this question, it was said:

"It may be conceded for the purpose of this appeal that the defendant was negligent in moving the cars in question at too high a rate of speed, with no one in control of them, in a locality in which it had reason to know there might be numerous pedestrians on and near the track." That was a case of a flying switch. The following cases have some bearing upon this question, though in most of them the person injured was not an employe: *Shelby v. Railway Co.* (Ky.) 3 S. W. Rep. 157; *Railway Co. v. O'Shields* (Ala.) 8 So. Rep. 248; *Barry v. Railway Co.* (Mo. Sup.) 11 S. W. Rep. 308; *Conley's Case* (Ky.) 12 S. W. Rep. 764; *Schindler v. Railway Co.* (Mich.) 49 N. W. Rep. 670; *Baker v. Railroad Co.* (Mo. Sup.) 26 S. W. Rep. 23; Beach, Neg. section 217. True it is that in some of the cited cases there was no one on top of the cars to control them. But this is not of controlling importance when, as in this case, the cars were being moved at an unlawful rate of speed, an act which the law makes negligence. Counsel for appellant cite several cases in support of their contention that the court invaded the province of the jury. We have examined all of them. Most, if not all, of them are not authority for the claim made by appellant. The case of *Railroad Co. v. Anderson* (Neb.) 56 N. W. Rep. 794, decides that it is error for a court to assume as proven facts which are in controversy. No such question is involved in this appeal. The only cases which can be said to appear to support appellant's contention are *Railway v. Baier* (Neb.) 55 N. W. Rep. 913, and other like cases, where it is held that negligence is a question to be submitted to the jury, and that the court cannot direct the jury that certain facts constitute negligence. But these are cases where the facts are unlike those in the case at bar. No question was made in them that there was no dispute as to the facts, and that the acts claimed as being negligent were so as a matter of law. None of them

involved the question here presented, as to whether, where the negligent acts are not disputed, and where they involve the violation of a law of the state or a city ordinance, and are therefore negligence *per se*, that it is beyond the province of the court to direct the jury that such acts constitute negligence, and that, if injury results therefrom, the defendant will be liable, unless the injured party has failed to show that he did not contribute by his own negligence to produce the result. The act of running these cars at a greater rate of speed than six miles an hour was of itself negligence, and, regardless of the fact as to whether kicking cars was *per se* negligence, the injury was inflicted by cars which were being run at an illegal rate of speed, and for such an injury, inflicted upon plaintiff in the absence of negligence on his part which may have contributed to produce the result, the defendant was liable. This is, in substance, what the court told the jury, and the instruction, as applied to the undisputed facts, was correct. Where the law makes an act negligence *per se* it is manifest that it is not necessary that the question as to whether such act amounts to negligence shall be submitted to the jury. The character of the act in such cases is determined by the law itself, and the duty devolves upon the court of stating to the jury what the character of the act is. It must be remembered that the facts of this case remove it from the operation of the general rule requiring the matter of negligence to be submitted to the jury.

V. The remaining question is as to whether the plaintiff, by his negligence, contributed to the injury. The court instructed the jury: That if there was a space of seven feet and ten inches between the tracks, which was reasonably safe to stand in without injury, and if plaintiff, in stepping away from one track, passed over this space near to or upon

another track, and was looking at the movement of a switch engine, or was watching an adz, and while so doing was struck by a moving car, which he could easily have avoided by watchfulness on his part, then he could not recover. That it was plaintiff's duty, in doing his work, to be reasonably watchful and careful for his own safety, and if, through his neglect to be thus watchful and careful, he stepped upon or near another track, and was injured by being struck by another train, and he could by such watchfulness and care have avoided the injury, then he could not recover. That, even if it was the duty of the section foreman to watch out for approaching cars, and inform plaintiff of them, still it was plaintiff's duty to be reasonably watchful and careful; and if, by exercising such care, he could have plainly seen these cars approaching in time, and could have got out of the way, but did not look in time, and thus got injured, he could not recover, even though he was not warned by the section foreman. No complaint is made of these instructions, but it is insisted that the jury ignored them, and that, if they had been followed, the verdict must have been for the defendant. It is also claimed that the court erred in not directing a verdict for the defendant. Many cases are cited to show that under the circumstances disclosed in this case plaintiff should not recover. Most of them are cases of injuries to strangers, to persons crossing tracks upon a highway, of those walking upon tracks, trespassers, and the like. The rule, so well settled, which requires a traveler about to cross a railway track to stop, look, and listen for approaching trains, does not apply, strictly speaking, to the case of one employed as a workman upon the tracks. *McMarshall v. Railway*, 80 Iowa, 765. While this is true, nevertheless plaintiff was bound to exercise reasonable care for his own safety. He had no right to rely wholly upon the

railroad company for protection from passing trains or
cars.   *Collins v. Railway Co.*, 83 Iowa, 346; *Magee v.
Railway Co.*, 82 Iowa, 250; *Haden v. Railroad Co.*, 92 Iowa.
226, 48 N. W. Rep. 733; *Keefe v. Railway Co.*, 92 Iowa, 182.
*Elliott v. Railway Co.*, 150 U. S. 245, 14 Sup. Ct. Rep. 85;
*Aerkfetz v. Humphreys*, 145 U. S. 418, 12 Sup. Ct. Rep
835.   What was such care must be determined
in view of the facts surrounding the accident.

It appears that plaintiff had never worked in
yards where cars were kicked; that he was not
acquainted with the practice of defendant in that
respect; that the accident occurred but three days after
plaintiff entered defendant's employ; that he was
engaged in driving a spike into a plank in the crossing
that he looked for trains in the direction from which
these cars came immediately before commencing to
drive the spike; that while driving the spike he saw an
engine approaching him on the track upon which he
was standing, and when he had finished driving the
spike the engine was within ten or fifteen feet of him;
he then stepped off of the track, and over near the main-
line track, and that an interval of from two to five
seconds elapsed between the time he stepped off until
he was struck by the detached cars, at which time he
was watching the engine and a man who was attempt-
ing to remove an adz which lay about a foot from the
engine; that there was a space of over seven feet
between the two tracks, where he could have stood in
safety.   The question is, could he, under the circum-
stances, by the exercise of reasonable care, have
averted the accident?   We do not think that it can be
said, as a matter of law, that plaintiff, under these
circumstances, was negligent.   He was justified in
working as he did, and in finishing driving the spike, so
that the engine might pass in safety over the crossing.
The interval of time after he stepped off of the track

until he was struck was so short that it is not clear that
he was not excusable for failing to see the approaching
cars on another track. Besides, his attention was
diverted by the effort of his companion, Scheeler, to get
the adz off of the track from in front of the approaching
engine. The evidence shows without conflict that after
the men hallooed to him he did not have time to avert
the accident. His companion did not observe these
cars. After stepping off the track, plaintiff started to
look in the direction from which these cars came, but
was startled, and his attention attracted, as we have
said, by the attempt of his companion to get the adz
off the track. We cannot say that his failure to observe
the approaching cars, and the danger of their striking
him, under such circumstances, was negligence.
Again, as bearing upon plaintiff's conduct and negli-
gence, while he had no right to rely blindly upon care
being exercised by his foreman, or of those operating
trains upon the tracks, still he did have a right to
assume that the defendant would exercise some care to
avoid sending cars along this main track at an inordi-
nate and unlawful rate of speed, and especially so
when, as it appears, he was not conversant with defend-
ant's practice in that respect. *Crowley v. Railway Co.*,
65 Iowa, 658; *McMarshall v. Railway Co.*, 80 Iowa, 758;
*Ominger v. Railway Co.*, 4 Hun. 159; *Schultz v. Rail-
road Co.*, 44 Wis. 638; *Goodfellow v. Railroad Co.*, 106
Mass. 461; *Noonan v. Railroad Co.* (Sup.) 16 N. Y. Supp.
678; Id. (N. Y.) 30 N. E. Rep. 67; 1 Thomp. Neg., p. 461.
True, it is that just at the moment of time that he was
struck he was not at work, but, as we have said, he had
looked just before he commenced to drive the spike, and
his attention had been engrossed in the meantime by
the adz incident, a circumstance which might well
startle him, and attract his attention. *Railway Co. v.
Dignan*, 56 Ill. 487.

The cases relied upon by appellant, and which in their facts are somewhat like the facts in the case at bar, we will now consider. The case of *Haden v. Railroad Co.,* 92 Iowa, 226, 48 N. W. Rep. 733, was one where a train had been cut, and plaintiff, a section man engaged in repairing the track, stepped off the track to let the first section pass, and then stepped back on the track again, without looking, and was struck by the rear section of the train. He knew of the custom to thus cut the train at that place, and knew that a caboose and passenger car were usually attached to the rear end of that train. He knew all of these things, and had been working for the defendant for years, and lived in full view of the tracks, and had often seen this train pass. He saw the train approaching. These facts are so unlike those in the case at bar that the holding in that case is not authority for saying in a case like this that defendant was negligent as a matter of law. In *Schaible v. Railroad Co.* (Mich.) 56 N. W. Rep. 565, it appeared that the plaintiff had knowledge of the manner in which the work was done. Not so in the case at bar. In *Keefe v. Railway Co.,* 92 Iowa, 182, the facts are clearly distinguishable from those in this case. In the cited case the injured party had been in defendant's employ twenty-five years; the bell on the engine which ran over him was ringing; he could easily have heard it; there was nothing to prevent his seeing or hearing the engine. His attention was in no way diverted. In *Buelow v. Railway Co.,* 92 Iowa, 240, the injured man was attempting to cross a railroad yard, and did not look for cars. There was nothing to show "that he was bewildered, confused, or excited, and nothing appears to excuse his omission to look for cars on the main line." In *Rutherford v. Railway Co.* (Minn.) 59 N. W. Rep. 302, it appeared that deceased was killed by a train running at its customary rate of speed, which was known to

him; that he knew that the train did not give signals at that place; and that his work did not require him to be upon the track, or so near it as to be in danger. It was held he was guilty of negligence. In *Wilbur v. Railroad* (Wis.) 57 N. W. Rep. 356, it was held that plaintiff was, as a matter of law, guilty of negligence. He was a foreman, fully acquainted with the switching yards through which he was walking. He knew that switching was going on behind him, and on the track upon which he was walking, yet continued to walk on the track without looking for trains. In none of these cases are the facts like those in the case at bar. The question of defendant's negligence was properly left with the jury, and their finding was warranted by the evidence. On an examination of the entire record, we discover no error.—*Affirmed.*

Rothrock, J. (dissenting.)—I do not concur in the conclusion reached by the majority in this case. If the jury had followed the instructions given by the court, and applied the evidence thereto, there would have been a verdict for the defendant. That part of the charge which I think was disregarded by the jury is to be found in the eighth paragraph, which is as follows: "If between these two tracks there was a space of seven feet and ten inches, which was reasonably safe to stand in without injury, and if plaintiff, in stepping away from one track, passed over this space, near to or upon another track, and was looking at the moving of a switch engine, or was watching an adz, and while so engaged was struck by a moving car, which he could easily have avoided by watchfulness on his part, then plaintiff cannot recover, and your verdict should be for the defendant, whether the speed of such cars was in violation of the ordinance or not. By the use of the word 'watchfulness' in these

instructions is meant the use of ordinary and reasonable care." Substantially the same idea is carried through the ninth and tenth paragraphs, with the additional thought that, notwithstanding the duty of the section foreman to watch out for approaching cars, and inform plaintiff of them, still it was plaintiff's duty to be watchful and careful, whether he was told of the approach of the cars or not. The fact is that the section foreman was not at the place of the accident when it occurred. The plaintiff testified that he saw him about five minutes before, taking a drink of water out of a keg about twenty feet away. Another witness stated that the section foreman left the place about half an hour before, and he saw him coming at the time of the accident, and he was there about two car lengths away. It is more than I can understand how the foreman could have warned the plaintiff of his danger. He was not present, and it is surely an unreasonable requirement that he should be present with the men at every moment of the day. The court doubtless gave this paragraph of the charge in view of the fact that the foreman was not present, and because the plaintiff was not in a position where warning was required from any one. He stood upright in a space seven feet and ten inches wide between the tracks, and so near one of them as to be in danger from an approaching car, and where it could be seen by a glance of the eye, which is almost as quick as a flash of light, and carelessly allowed his attention to be attracted to the switch engine and adz, from which he was in no peril, and he gave no attention to where he was standing. Under the eighth paragraph of the charge there should have been a verdict for the defendant. It appears to me no other result ought to have been reached, considering the undisputed evidence in the case. Plaintiff should have used not

only his ears, but his eyes, to guard against an approaching car. As is said in *Elliott v. Railway Co.*, 14 Sup. Ct. Rep. 85: "Such omission has been again and again, both as to travelers and employes on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is in itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track or that there is no danger therefrom." It is to be remembered that this is not a case where an employe, in escaping from one danger, and in the confusion, exposes himself to another. The plaintiff left the track on which the engine was approaching. He was in no danger, either real or apparent, from that, and he ought not to be allowed to recover damages for carelessly standing in the place where he was injured because he was interested in looking at the switch engine and in the removal of the adz from the track. It was a clear case of inattention and negligence which ought to preclude recovery. I doubt if any authority can be found for a recovery upon any such an insufficient showing of care for one's safety. In my opinion, the verdict should have been set aside, and a new trial ordered.

Granger, J., concurs in this dissent.